Judge Napton
delivered the opinion of the court..
For- the purposes of this case, it does not seem to be material to determine, whether the territorial legislature in 1816 succeeded in introdu *558 cing-the common law, to the exclusion of the Spanish law or not. In the: case of Lindell vs. McNair, (4 Mo. Rep. 380) this court held, that a deed of' bargain and sale, executed in 1810 by a husband and wife, and' acknowledged according to the forms prescribed for such deeds, when, designed to convey the husband’s land and the wife’s dower, would' convey the wife’s land, although previous to the act of Jtme 22d 1821, there was no statute of this State or territory, expressly authorizing such a conveyance. The court considered the Spanish law to be still in force after-the passage of the act of 1816, and as that law authorized a a husband, to convey his wife’s paraphernal property with her consent, the deed executed in. 1820 was upheld. It was also asserted that the deed was- good at common law. As this decision was made as early as-: 1836, and may have formed the basis of many titles acquired upon the faith of it. This court in a late case (Picott vs- Cooley 10 M. R. 312) intimated that it ought, not to be disturbed.
If the grounds upon which the decision of the case of Lindell vs. McNair was placed are to be adhered to, as well as the decision itself, it would appear that the act of 1816, which purported to introduce the common- law to some extent, was a signal failure. To introduce a system of unwritten law for the purpose of supplying the deficiencies of another system of a similar character, supposed to be equally perfect and comprehensive as the first, making both systems subordinate to the written or statute law, was certainly an act of legislation either entirely nugatory, or if not nugatory, singularly calculated to produce confusion and uncertainty. The Spanish law, supposed to be in force here previous to lSIGjwas a system, complete in itself, embracing.all the subjects usually regulated by a municipal code, and providing for all the rights and remedies incident to every relation of life. If that code was left in operation by the act of 1816, except where the statute laws of the territory had altered it, the common law could only be applied to supply the defects of that system. Under this construction of the act, the operation of the common law must have been extremely, limited, if indeed there was any ground at all for it to rest upon.
It is probable that the sudden introduction of the common law in 1816 might have been repugnant to the feelings and interests of the old inhabitants who had been familiar with another code. But the emigrants from the olden states, who regarded the common law as their heritage, and who in 1816 already constituted much the larger portion of our population, were doubtless anxious for the immediate acquisition of this system, and had practically regarded it, as the law longbefore its formalin *559 troduction by the legislature. A reference to our territorial laws from 'the first acquisition of the country down to 1816, will show that the common law furnished our law givers all their notions of law and equity, •as well as all the terms used to express them. The deed from which this controversy has sprung, is a conveyance by bargain and sale, and it would seem that, at the date of its execution, the forms of conveyancing derived from the common law were practically in vogue, -even among the ancient inhabitants.
Assuming the law to be as-declared in the case of Lindell vs. McNair, that in November, 1816, a husband and wife could convey by deed of •bargain and sale the wife’s land, the question is still to be determined whether the infancy of the wife, at the time of such conveyance, will avoid the deed or render it voidable, and-if so, in what mode, or at what 'length of time it may be avoided.
At the common law, a married woman could alienate her land by fine andrecovery; but such alienation might be avoided on account of the infancy of the wife. If, however, it was not avoided during infancy, it ■could not be afterwards avoided, for this conveyance, being by matter of record, must be tried by inspection upon writ of error. 3 Bac. Abi. Infant Ch. 1, sec. -7. A feoffment or other alienation in pais, might be -avoided by an infant or his heir, at any time by entry, whether during his nonage or after his full age. Co. Litt. 380, b. So if the husband and wife aliened the land of the wife, both being infants, the wife after the •death of her husband, was entitled to her writ of dum, fuit infra actatem. And if they joined in an alienation where the wife only was an infant, after the death of her husband, she was entitled to her writ of dum fuit •infra actatem, as well as her cui in vita. Fiti N. B. 192, K. Co. Litt., 237, a, Com. Dig. infant, c, 4 Bac. Abi.; Infancy i, 7. But these writs must be understood as only applicable to alienation by feoffments, or ■other conveyances in pais, and could be brought only after full age, unless brought by an heir of the person entitled. Fiti N. B. 192, g.
This distinction between conveyances by matter of record, and those made in pais as feoffments, bargain and sale, are important in determining the force of a conveyance by husband and wife, made in 1816, after the passage of the act of the 19th January, upon the supposition that the common law was then in force. As our law now stands, it may be still more important, should a question arise as to the proper construction of a deed purporting to convey the wife’s land. Our statute now reads : that “a married woman may convey any of her real estate by any conveyance thereof executed by her herself and husband, and ac *560 knowledged by such married woman, and certified in the manner hereinafter described, by some court having seal, or some judge, justice or clerk thereof.” It is not provided what effect such a conveyance shall have, whether that of fine and recovery, or of a feoffement or bargain and sale. If, however-, we recur to the first act passed on this subject, that of June 22,1821, the question is readily solved. That act provided that “such deed shall be as effectual in law to pass all the right, title and interest of the wife, as if she had been an unmarried woman.” As the' deed of bargain and sale made by an unmarried infant was avoidable, it followed that a conveyance by a husband and wife of the wife’s land, during the minority of the wife, was also voidable. Our law remained in this condition until the revision of 1835, when this statute, like many others, was greatly changed in phraseology and put into a condensed form. The effect of deeds of this character was entirely omitted. I mention this, not with any view to enquire what is the proper construction of the present law. I shall assume that in 1816, before the common law had been changed by any special enactment, no greater effect could with propriety be given to a deed conveying the lands of a married woman, than was subsequently given to it by the act of 1821. In Lin-dell vs. McNair, the court do not intimate whether the conveyance was equivalent to a feoffment or a fine and recovery. As there was no statute on the subject, and the form of the conveyance was a bargain and sale, it could hardly have been understood to have the force of a fine and recovery. If the deed, therefore, of Yasquez and wife in 1816, is to be construed by the common law, it was at least a conveyance which could be avoided by reason of the infancy of the Mad. Yasquez.
By the Spanish law, a husband could convey his wife’s paraphernal property, with her consent. There is no doubt the land owned by Mad. Vasquez was paraphernal. It has not been questioned, in the argument <of this case, but that the husband’s conveyance of his wife’s land, she being an infant, could be avoided by the wife, at the Spanish law, as well as by the common law. It is laid down in Frebero, (3 Feb. sec. :36,) “If the husband sell paraphernal property, without the consent of ■the wife, for a full price, she can recover it from the purchaser, for she does not lose its dominion, inasmuch as one man’s property is not to be transferred to another without the owners consent.” Now by the Spanish law a minor, above the age of fourteen but under twenty-five, might sell his property, and the sale was translative of title sub modo, but he had the privilege of subsequently rescinding and suing for the property. So a married woman, under age, although her consent to the transfer of *561 her property might be sufficient to pass the title for the time, could dis. sent after arriving of age. She had the same action for restitution which the Spanish law gave to minors generally. As this action was limited to four years after attaining majority, the question is whether this limitation affected a minor married woman.
In Chesman’s heirs vs. Saddler, (10 Marten L. R. 735) judge Porter said : “ The law on this point I understand to be, that if the minor, after he comes to the age of majority, expressly ratifies the alienation, or tacitly approves of it, either by suffering the time prescribed for him to commence his action to expire, or by doing acts in conformity with the transfer of his property, that he cannot afterwards claim it. Because, in the language of the law, the intention which is inferred from the act is more powerful than that which cab be ascertained from words. ”
This action for restitution is given when the minor’s estate has been sold according to the forms of law; by. it, he was enabled to redeem the property, by re-paying the price. As the laws of Spain did not permit a minor’s estate to be sold except under special circumstances, and then under the direction of a judicial officer. The minor was allowed four years after coming of age to have his action for recovering back the property, where the law was not strictly complied with. In O’Conner vs. Bane, (3 Marten 453) it is said : “A tutor has not the power of alienating the real estate of his pupil, except in the cases provided by law, and then only with permission of the judge. If contrary to this provision, he alienates it, the minor may within four years after he comes of age, obtain restitution of his property, on proving that the álienation has been injurious to him. (Partidas 6, 1 lib. 2.) But when he has suffered the four years to elapse, without claiming any restitution, his silence is considered as an approbation of the act of his tutor, and the purchaser of his property is quieted in his possession. ” This writ or action for restitution was also given where the minor himself had made the alienation.
It might be a question, whether this limitation of four years would •run against a married woman, whose lands had been sold during her minority, but the very limited examination which I have been enabled to bestow on this subject, has led me to the conclusion that it does. It is certain, that the prescription of ten years originating in a just title and good faith will run against a disposition by the husband of his wife’s paraphernal property—(3 Feb. lib. 3 ; Ch. 2, 3, 4,) and I see no reasons why a similar limitation should not attach to the wife, after the removal *562 of her disability of infancy. In the case of O’Conner vs. Bane (3 Marten) the point was made, but as the prescription of ten years was proved, the court did not examine the other question, and Would not permit the ten years prescription to apply, because the land of the minor had been 'Sold by the mother, after she had married a second time, and by such marriage forfeited her rights as tutrix.
Admitting that the married woman, where paraphernal property have been conveyed by her husband during her infancy, must under the Spanish law bring her action for restitution within four years after she comes of age, notwithstanding she continues married. Let us examine the facts of the present case, and see how this limitation will affect the result.
The conveyance of Vasquez and wife to Hanley, was executed on the 4th November, 1816. Mad. Vasquez was born on the 2d May, 1798, and was consequently twenty-one years old on the 2d May 1819.
The act “ for the limitation of actions to be brought for the inheritance or possession of real property, ” was passed on the 17th Dec. 1818. That act, provided, that “ no person should have any writ of right, or any other real or possessory writ or action,” except where the session or possession upon which the action was to be maintained, had been within twenty years before the suit; and further, that “ any person or persons now having right or title of entry as aforesaid, and the heir or heirs of such persons may within twenty years from this time enter or commence any such action or suit as he, she or they, or his or her or their ancestors might have done before the passing of this act.” This act undoubtedly abolished the prescription of ten years, which prevailed under the Spanish law, and such was held to he the law in Landes vs. Perkins (12 Mo. R. 238.) Did it not also abolish the limitation upon the action for a restitution of lands sold by a minor ? If the Spanish law was in force in 1818, and by virtue of that code an action could have been maintained at that period for the restitution of lands sold during plaintiff’s minority, that action, by whatever name it may have been called, was in substance and effect, a real action. It was an action to recover the possession of lands, and therefore came within the letter and spirit of the act of limitations. It will not do to say that the act was intended to apply only to common law actions ; for if the admission be made, that such was probably the intention, it only proves that the legislature acted on the presumption that no other kind of actions were known to our courts, or recognized by our laws. The argument would therefore prove too much : it would show that the log *563 islature did not intend to limit the period of commencing a proceeding under the Spanish law, only because they believed the common law to have been introduced two years before, and the Spanish law abolished. But if the Spanish law and common law were both in force in 1818, Madam Vasquez had a right to this action of restitution before some tribunal of the territory, and the action was strictly a possessory action. It cannot be supposed for a moment, that a party who had a claim for land, designated by a name known only to the Spanish law, was intended to be barred, and was barred, whilst at the same time he could give his claim another name, and bring his suit in a common law tribunal.
It surely cannot be denied, that in 1818, Madam Vasquez could have maintained a common law action for the recovery of her land; for those who maintain the continued existence of the Spanish law in this territory after 1816, seem to concede that it existed only for the protection of rights, not to control the remedies, or dictate the forms of action in our judicial tribunals. Our legislative and judicial history conclusively establishes, that no tribunals were constituted here for administering the Spanish law, in its forms, and no suits were over maintained in any other mode than that known to the common law. Our judges and lawyers were educated in this system, and our legislature was- thoroughly imbued with its spirit. If, then, Madam Vasquez could have maintained a common law action for the restitution of her land in 1818, that right of action, by whatever name it was called, was protected by the act of limitations—that protection extended to 1825, when the common law was beyond all question fully introduced.
We must therefore conclude that the principles of the common law must settle the right involved in this suit.
The deed under which the plaintiff claims, was executed by Vasquez and wife in 1846, and the only question is, whether this deed, made thirty years after the first, was effectual to rescind the forms and pass the estate to the plaintiff.
It would be useless, at this day, to examine the much discussed distinction between the void and voidable acts of an,.infant. The modern doctrine, which originated in the case of Louch vs. Parsons, and which hold the deed of an infant to be merely voidable, is certainly more consonant to natural justice, than the harsher rule which was thought to have prevailed previous to that case. The deed of Madam Vasquez in 1816, was then voidable only. Is her silence, her acquiescence during thirty years a bar ? Can the mere inaction of a feme covert, however long continued, amount to an affirmance of a voidable contract ? Such. *564 would have been the Spanish law, as we have seen ; but under our system, the disabilities of a feme covert are greater than that under the-civil or Spanish code, and as a consequence, her responsibility is diminished, and her privileges are more extensive and better protected. No. statute of limitation barred Madam Vasquez, and no act was done by her to affirm or ratify the deed of 1816. She was merely passive. The fact that she lived in the city where the lot in controversy lies— that she was probably aware of the improvements going up : that she made no objections, and put in no claims;—these circumstances, whilst they might affect the equitable character of' the transaction, canhardly be regarded as. an affirmance. The case of Wheaton vs. East. (5 Yerger 59) is a very strong case upon this point-; but it was essentially different from the present. A confirmation was deduced from the conduct of the plaintiff in that case, scarcely warranted- by the general current of authorities. The plaintiff lived in the neighborhood of the lot he had sold during his infancy—saw the defendant making large expenditures in valuable improvements—said- he had sold' the lot, had been honorably paid for it, and-was satisfied, and make a proposition for its purchase to. the defendant. These circumstances were held to preclude him from subsequently setting up title. But Madam Vasquez has been merely inactive, and during thé entire period of her silence has been a feme covert. The generally received doctrine undoubtedly is, that mere words, much less mere silence or inaction, will not amount to a ratification of- a voidable deed. Clamorgan vs. Lane, 9 Mo. R. 473.
It seems to be well, settled; that an entry upon the land is not necessary to avoid a deed made during infancy, but it may be avoided by a deed executed to another for the same land after arriving at full age. '
The other judges concurring, the judgment of the court of common pleas is affirmed..