---

### Doe, on the Demise of Moore and Wife, *v.* Abernathy.

A deed of bargain and sale of real estate, executed by an infant for valuable consideration, is voidable but not void.

A female infant residing in *Pennsylvania* executed there a deed of bargain and sale for land situate in this state. She afterwards married, but whether before or after her majority did not appear, nor did it appear where, after the execution of the deed, she and her husband had resided, nor that her husband had acquiesced in the deed after he knew of it. *Held*, that the lapse of about five years after the wife's majority, without any attempt to disaffirm the conveyance, did not, under the circumstances, prevent the husband and wife from disaffirming it.

An action of ejectment for premises conveyed by the lessor whilst an infant, commenced after his majority, and within a proper period, is a valid avoidance of the conveyance; but the grantee or tenant in possession must be notified of the intention to disaffirm before the commencement of the action.

In ejectment for an entire tract of land, any undivided portion of it may be recovered.

Brothers and sisters of the half-blood inherited, under the act of 1818, the estate of a deceased brother, equally with brothers and sisters of the whole blood.

ERROR to the *Rush* Circuit Court.

DEWEY, J.—Ejectment on the demise of *Moore* and wife against *Abernathy* for a quarter section of land. Plea, not guilty. An agreed case presents the following facts, viz.:

*Samuel Ross*, a citizen of *Pennsylvania*, was the patentee of the land in controversy; he died in 1821, on a journey commenced for the purpose of removal to this state, intestate, and without issue, leaving his mother and eight brothers and sisters of the full blood, and four of the half-blood, the latter having a different mother from the former; his mother and two of his brothers of the full blood (the latter leaving no issue) died intestate before the date of the demise laid in the declaration. *Rebecca*, one of the lessors of the plaintiff, married to *Moore*, the other lesssor, is a sister of the full blood. On the 4th of *November*, 1833, in the state of *Pennsylvania*, *Rebecca*, being then sole, and lacking about five months of full age, joined several of her brothers and sisters in a deed of bargain and sale, conveying the land in controversy to one *Clawson* in fee-simple, she and each of the other grantors receiving 100 dollars in money as a consideration for the sale. *Clawson* took possession of the land, and in 1835, for a valuable consideration, conveyed it to one *Orput*, who, in 1839, for a like consideration, conveyed it to the defendant, who held the possession at the commencement of this suit in 1841. In *March*, 1839, the present lessors of the plaintiff commenced an action of ejectment for the same land, in the *Rush* Circuit Court, and recovered a judgment; the judgment. was reversed in this Court, and the cause finally dismissed. After the dismissal, *Moore*, in behalf of himself and wife, gave the defendant formal written notice that they intended to disaffirm her deed to *Clawson* on account of her infancy at the time of its execution; he also demanded possession of the premises. This action was commenced immediately afterwards. It does not appear when the lessors of the plaintiff intermarried, nor where they have resided since the date of *Rebecca's* deed to *Clawson*. The Circuit Court rendered judgment in favour of the defendant.

Two principal questions arise from the above facts. First, Was the deed executed by Mrs. *Moore* while under age void, or voidable only? And, secondly, if voidable only, has it been legally disaffirmed?

It was held by the Court of King's Bench in *England*, after much deliberation, that an infant's conveyance by lease and release was not void, but voidable. *Zouch* v. *Parsons*, 3 Burr, 1794. That decision, it is true, has not met with entire approbation, but it has never, we believe, been overruled in that country; and in this country, it has been followed by several of the state Courts, has received the sanction of the Supreme Court of the *United States*, and may be considered as generally established law. 2 Kent's Comm. 236.—*Jackson* v. *Carpenter*, 11 Johns. 539.—*Kendall* v. *Lawrence*, 22 Pick. 540.—*Kline* v. *Beebe*, 6 Conn. 494.—*Bigelow* v. *Kinney*, 3 Verm. R. 353.—*Richardson* v. *Boright*, 9 *id*. 368.—*Tucker* v. *Moreland*, 10 Pet. 58. These cases and others of the same import clearly settle the principle, we think, that a conveyance of real estate by an infant for a valuable consideration is not a void act, but is a valid contract until legally avoided. And we conceive this view of the subject is quite as well calculated to protect the interests of the minor, as to consider his conveyance absolutely void; for if it be absolutely void, he could not on arriving at full age affirm it, however beneficial to him; but if it be only voidable, he may, in the exercise of his matured judgment, confirm or disaffirm it, as he may deem it advantageous or prejudicial to his interests.

What acts of a person, after attaining full age, are necessary to confirm or avoid a conveyance made by him during infancy, or, indeed, whether any thing more than mere acquiescence is required for the purpose of confirmation, does not appear to be well settled. In *Jackson* v. *Carpenter*, *supra*, it was held that a deed of bargain and sale made by an infant might be disaffirmed by him, after full age, at any period before he was barred by the statute of limitations from bringing an action of ejectment; that such a deed might be avoided by a deed of bargain and sale to another grantee, made eleven years after the grantor's majority, and without a previous entry upon the land, provided it was vacant and uncultivated at the date of the second conveyance. The same doctrines are fully recognized in *Jackson* v. *Burchin*, 14 Johns. 124, and in *Tucker* v. *Moreland*, *supra*. The principle of these decisions, as to the point under consideration, was, that the second deed disaffirmed the first, because

the two acts were equally public and solemn. The disaffirmance of an infant's deed of bargain and sale by a like deed to another grantee made after majority, was supposed (how justly we will not judge) to bear a strong analogy to the avoidance of his feoffment with livery, by a subsequent entry upon the premises. It was not, however, decided by either of the cases mentioned, that a second deed of bargain and sale was the only mode of disaffirming the first. And it appears to us that serious difficulty would grow out of the establishment of such a doctrine. If the land designed to be conveyed by the second deed, should, at the time of its execution, be held adversely, that deed would be void for maintenance, and could neither convey a title nor effect any other purpose. Besides, we do not perceive the propriety of allowing the conveyance of an infant to be disaffirmed, and of denying to him the privilege of personally holding the premises after disaffirmance; and yet such must be the result, if his conveyance by deed can be annulled only by a second deed executed to another grantee; the very act of disaffirmance of his voidable conveyance, would divest him of all title. In *Jackson* v. *Carpenter*, though the decision turned on the principle already stated, the Court intimated an opinion that the deed of an infant might be avoided in various ways, and, among others, by an action of ejectment. In *Bool* v. *Mix*, 17 Wend. 119, which was ejectment on the demise of husband and wife, the wife having conveyed while an infant, it was held that an action would not lie to recover land conveyed by an infant by deed of bargain and sale, without a previous entry upon the land, (it not being vacant and uncultivated,) and by the execution there of a second deed to a third person; or without having done "some other act of equal notoriety" in avoidance of the infant's deed; and that "the avoidance, whatever might be its form, must precede the bringing an action to recover possession." We clearly understand from this case, that an entry by an infant, after majority, upon the land previously conveyed by him, and the execution of a deed to another grantee, will vacate the first deed; but what other act of equal notoriety is sufficient for that purpose we are not informed, nor can we conjecture, unless a clue be furnished by the following

May Term, language of the Court: "It is unnecessary on the present
1845.       occasion, to say that an entry was the only mode in which
Doe         the deed could be avoided, for the plaintiff, previous to bring-
v.          ing the action, had done no act whatever to disaffirm the
ABERNATHY.  conveyance. She had not even demanded possession of the
land, or given notice to the tenant that she did not mean to be
bound by the deed." It would seem from this passage, that
the Court was of the opinion that a demand of possession,
or giving notice by the infant, after full age, that he did not
mean to abide by his deed, would be a legal disaffirmance
of it; and there is another opinion expressed by the Court
utterly at variance with the supposition, that they held the
doctrine that a disaffirmance of an infant's deed of bargain
and sale could only be effected by an actual entry on the
land, and the execution there of a second deed to a third
person; and that opinion is this, that the second deed, if
executed while the land was held by an adverse possession
would be void, and could not amount to a revocation of the
first deed. Indeed, if it be true that to avoid an infant's
deed he must, after full age, enter on the land (if not vacant)
and there execute a deed to a third person, and it be also
true that such second deed would be void if the land was
held adversely, it must follow that an infant's conveyance
never can be disaffirmed, if it happen that the land is in an
adverse possession always after his arrival at full age. And
if the first proposition only be true, as has been already
remarked, an infant who has conveyed his land can never
afterwards hold it himself, because he can only disaffirm his
conveyance by an act which necessarily divests him of title.

The cases above referred to all require some positive,
solemn, and notorious act, in order to disaffirm an infant's
deed of conveyance; but they leave the nature of that act
a matter of great doubt, and decide that it may be performed
at any time previous to the barring of an action of ejectment
by the statute of limitations.

But there is another class of cases which hold that the
right of disaffirmance must be exercised within a reasonable
time, and that the omission so to exercise it will alone con-
firm the infant's conveyance. In *Holmes* v. *Blogg*, 8 Taunt.
35, it was remarked by *Dallas*, J., "I agree that in every in-

stance of a contract voidable only by an infant on coming of age, the infant is bound to give notice of disaffirmance of such contract in reasonable time," &c.; and nearly the same idea was expressed by *Park*, J. In the case of *Kline* v. *Beebe*, 6 Conn. 494, it was held that the voidable acts of infants might be affirmed by the omission to disaffirm them within a reasonable time; and that the omission alone for eleven years to disaffirm an infant's deed, was "an acquiescence in the conveyance amounting to a tacit affirmance." The same doctrine is distinctly recognized in *Richardson* v. *Boright*, 9 Verm. Rep. 368; and it has received the sanction of Chancellor *Kent*, who says, 2 Comm. 5th ed. 238, "his (the infant's) confirmation of the act or deed of his infancy, may be justly inferred against him after he has been of age for a reasonable time, either from his positive acts in favour of the contract, or from his tacit assent under circumstances not to excuse his silence."

Between these conflicting authorities and opinions,— on the one hand, that an infant's voidable conveyance remains binding upon him, until disaffirmed by some public act to be performed within any period not forbidden by the statute of limitations, and on the other hand, that no disaffirmance can take place unless the right be exercised within a reasonable time,—we are not called upon to decide.

In the case under consideration, the infant joined in a conveyance of the premises in dispute in *November*, 1833, and attained to full age in the *April* following, but whether before or after her marriage, the record does not inform us. At the time she conveyed she resided in *Pennsylvania*, and for aught that appears she and her husband have resided there ever since. Early in 1839, about five years after the majority of Mrs. *Moore*, the present lessors of the plaintiff commenced an action of ejectment for the land now in dispute, and recovered a judgment in the Circuit Court, but failed in this Court on the sole ground that they had not given previous notice of their intention to avoid the contract, nothing being determined with regard to their right to disaffirm it. *Clawson* v. *Doe d. Moore et ux.* 5 Blackf. 300. It does not appear that Mrs. *Moore* was sole an instant after her majority, and possessed the power by her separate act to

May Term,
1845.

Doe
v.
Abernathy.

avoid her deed; nor does it appear that her husband acquiesced a moment in the contract after he knew she had made it. For aught that appears, the first action of ejectment was commenced so soon as *Moore* was informed of the conveyance by his wife during nonage. And he gave the notice of the intention to annul his wife's conveyance as soon as he was informed that such notice was necessary. Under these circumstances, we are not prepared to say that the lessors of the plaintiff have forfeited their right to disaffirm the deed of Mrs. *Moore*, even upon the supposition that they were bound to exercise it within a reasonable time short of the period allowed by the statute of limitations, with regard to which point we make no decision. Nor do we express any opinion of what would have been the effect of five years' acquiescence on the part of the lessors, had it appeared that they lived in the vicinity of the land in contest, with full knowledge of their rights, and with easy opportunity to notify the tenant in possession of their intention to disaffirm the conveyance made during nonage.

It remains to be inquired whether the lessors of the plaintiff did in fact disaffirm the conveyance, and give the defendant notice thereof before the institution of the suit?

We have before remarked, that the cases to which we have referred leave the question of what act will disaffirm a voidable conveyance made by an infant, in a state of great uncertainty. None of those cases has actually decided that any act less than a deed of bargain and sale will operate as a disaffirmance; but several of them imply that some other deliberate and public act will be sufficient for that purpose. And we think we have said enough to show the inconvenience, if not the absurdity, of establishing the doctrine that an infant's deed of bargain and sale can be avoided only by a subsequent deed of the same nature to a different grantee. It has been decided in *Ohio* that any act unequivocally manifesting an intention to disaffirm, would render the avoidance effectual; and that the commencement of an action for the possession was an act of that character. *Lessee of Drake et ux.* v. *Ramsay et al.* 5 Ohio R. 251. We concur in the opinion that an action of ejectment for premises conveyed by an infant, commenced after the majority of the grantor

and within a proper period, is a valid avoidance of his conveyance; but we think (and have so decided as is shown above,) that the grantee or tenant in possession must be notified of the intention to disaffirm before the commencement of the action. This and more has been done in the present instance. An action was commenced in the first place, which ultimately failed for the want of prior notice of intention to disaffirm; that notice in writing was then formally given, and the present action immediately commenced. That these facts constitute a legal disaffirmance of the conveyance by Mrs. *Moore* to *Clawson*, under whom the defendant mediately claims, and due notice thereof to him, we cannot doubt.

But it is contended that the judgment of the Circuit Court must stand, because the demise laid in the declaration being for an entirety, the lessors of the plaintiff cannot recover less than the whole tract of land sued for; and they cannot recover that, because it is shown that they have title to but a small undivided portion of the whole. This objection is clearly untenable. The one or two cases quoted in support of it must yield to the great preponderance of authority the other way. There is no doubt but that, under a demise of an entire tract of land, any undivided portion of it may be recovered. Adams on Eject. 211, and the cases quoted in note. *Samuel Ross*, from whom the lessors of the plaintiff claim by descent, left a mother, eight brothers and sisters of the full blood, and four of the half-blood. We have decided that under the law of descents as it stood in 1831, the full and half blood of a deceased brother equally inherited his estate. *Clark et al.* v. *Sprague et al.* 5 Blackf. 412. The law of 1818, which prevailed in 1821 when *Samuel Ross* died, was the same. Laws of 1818, 183. The twelve brothers and sisters therefore left by him, together with his mother, were his heirs at law. The share of Mrs. *Moore*, consequently, in the land sued for, was originally one undivided thirteenth part. This share was somewhat increased by the subsequent deaths of her mother and two of her brothers. The amount of this additional share will depend somewhat upon the order of their deaths, for though the brothers and sisters were all heirs to each other, they were not all heirs

May Term, 1845.

of the mother of *Samuel Ross*, for she was not the mother of them all. As the record stands, it does not appear whether the mother or the two brothers died first. The lessors of the plaintiff must, therefore, recover the least favourable increased share growing out of the deaths of the mother and the two brothers.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*C. H. Test* and *G. B. Tingley*, for the plaintiff.

*C. B. Smith*, for the defendant.