## SCRANTON *v.* STEWART ET AL.

JUROR.—*Challenge.*—*Opinion Formed and Expressed.*—It is not a good cause for the challenging of a juror, that he testifies that he has formed and expressed an opinion upon the merits of the cause and the rights of the parties, as the result of a conversation with one of the parties or from rumor, but that the opinion formed will readily yield to the evidence presented on the trial, and that he can hear the evidence and decide the case as impartially as though he had not formed and expressed an opinion.

EVIDENCE.—*Privileged Communication.* — *Attorney.* — *Husband and Wife.*— On the trial of an action brought by a married woman to recover possession of her separate real estate from her vendee, a witness may not, over her objection, detail a conversation had with her by him as the attorney of her husband in relation to the sale of certain personal property purchased with money derived from the sale of such real estate. In such case the attorney will be regarded as the attorney of both the husband and wife.

SAME.—*Judgment Procured by Fraud.*—Where a court may ascertain by inspection of its own records that a judgment, the record of which is offered in evidence, valid on its face, was procured by fraud, it is error to admit such evidence over objection.

MARRIED WOMAN. — *Infancy and Coverture.*— *Contract.*— *Disaffirmance.*— A deed of conveyance of the separate real estate of a married woman, or of an infant married woman, executed by her alone, is void; if her husband join therein, the disability of her coverture is wholly removed, and, if she be an infant, that of her infancy renders the joint conveyance not void, but voidable, and vests the title to the land in the grantee, subject to the female grantor's right of disaffirmance upon her arrival at the age of twenty-one years, and until divested by some act done by her to disaffirm the contract; which, though she remain a *feme covert*, must be done by her within a reasonable time after her arrival at age, although she is not required to bring her action to recover possession during the continuance of her coverture.

SAME.—*Act of Disaffirmance.*—A written notice given by such *feme covert* after her arrival at age, that she disaffirms such executed contract, is a sufficient act of disaffirmance.

SAME.—*Reasonable Time.*—Such an act of disaffirmance done within three years and a half after the female grantor's arrival at age was held to have been done within a reasonable time.

SAME.—*Evidence.—Ratification.*—On the trial of an action brought by a married woman to recover possession of her separate real estate, conveyed by her and her husband to the defendant, on the ground that when the conveyance was made she was an infant and a *feme covert*, and that she had given to the defendant written notice of her disaffirmance of the conveyance within three years and a half after her arrival at age, acts and declarations of the plaintiff done and made after her arrival at age and before her disaffirmance of the contract, tending to prove a ratification of her conveyance to the defendant, were admissible in evidence.

SAME.—*Estoppel.*—In such case, the fact that when the female grantor became of age the defendant was indebted to the husband of the female grantor upon notes given for the purchase-money of said real estate, in a large sum, which was afterwards paid by the defendant, would not estop her from subsequently disaffirming the contract, unless she knew that such purchase-money was unpaid and the defendant was ignorant of the fact that the plaintiff was an infant when she executed the conveyance.

NEW TRIAL.—*As of Right.—Practice.*—When a motion for a new trial for cause, in an action for the recovery of the possession of real estate, is overruled, and an order is thereupon entered that the party who made such motion shall have a new trial as of right upon payment of costs within one year, such order is nugatory, the maker of such motion not being precluded by the overruling thereof from taking a new trial as of right, as provided by section 601 of the code.

From the Ohio Circuit Court.

*H. A. Downey, S. R. Downey* and *D. T. Downey,* for appellant.

*W. S. Holman,* for appellees.

BUSKIRK, C. J.—By this action the appellant sought to recover the possession of certain described real estate, upon the ground that when she and her husband conveyed the same to appellee Stewart, she was an infant, under the age of twenty-one years, and a *feme covert*. Ricketts, the other appellee, was the tenant of Stewart, and need not be further mentioned.

Issue, trial by jury, verdict for appellees, motion for new trial overruled, and judgment on verdict.

The action of the court in overruling the motion for a new

trial is assigned for error, and presents all the questions aris-
ing in the record.

The first, second and third reasons assigned for a new trial
were, that the court erroneously overruled appellant's chal-
lenge to Levi Scroggin, William Gerrard and Ezra Hastings,
called as jurors.

One of the three persons called as jurors (Hastings) testi-
fied that he " had asked said Stewart if he had such a case in
court, and Stewart said he had, but did not talk much about
it, but he (Hastings) had formed and expressed an opinion
concerning the merits of the case; that he believed the
opinion formed by him would readily yield to the evidence
presented upon the trial, and that he could hear the evidence
and decide the case as impartially as though he had not pre-
viously formed or expressed an opinion upon the case."

Each of the other two jurors testified "that he had heard
the case talked about by various persons; that, upon what
he had heard, he had formed and expressed an opinion upon
the merits of the case and the rights of the parties; that he
believed his opinion was of such a character that it would
readily yield to the testimony that might be offered in the
case."

The appellant challenged each of the above named jurors
for cause, but the court overruled the objection, and held
each of such jurors to be competent.

One of the jurors had formed and expressed an opinion,
as the result of a conversation with Stewart, the appellee,
and the other two jurors had formed and expressed opinions
from rumor; but they all stated that the opinion formed
would readily yield to the evidence presented upon the trial,
and that they could hear the evidence and decide the case as
impartially as though they had not formed and expressed
opinions.

The question presented for our decision is, whether such
persons were competent jurors. A question of such fre-
quency and importance in practice ought to have been defi-
nitely settled, and should not, at this late day, be regarded as

an open and debatable question, and yet learned counsel earnestly rely upon adjudged cases in this court as sustaining diametrically opposite views. This renders it necessary that we should review the previous decisions of this court, with the view of arriving at some fixed and definite rule upon the subject.

The first case which we have met with in this court, involving the question under examination, is that of McGregg v. The State, 4 Blackf. 101. There the juror testified that he had formed and expressed an opinion as to the defendant's guilt from report; but that he had heard no witness, as he knew of, speak of the transaction; that he lived eighteen miles from the neighborhood of the defendant, and he had never been in the defendant's neighborhood since the transaction complained of.

The court, after reviewing some English and American cases and quoting the statute in reference to the challenge of jurors in criminal cases, proceed to say:

"We consider that, under this statute, when the juror answers that he has formed or expressed an opinion of the defendant's guilt, there are other inquiries to be made before the juror can be set aside. The nature and cause of the opinion must be inquired into. If it appear from the answers of the juror, or from any other testimony, that he has formed or expressed an opinion of the defendant's guilt out of ill-will to the prisoner, or that he has such a fixed opinion of the defendant's guilt as will probably prevent him from giving an impartial verdict, the challenge ought to be sustained. But if the opinion be merely of that light and transient character, so commonly formed when we hear any reports of the commission of an offence, such an opinion merely as would probably be changed by the relation of the next person met with, it is not a sufficient cause of challenge.

" In the case under consideration, the juror's opinion was occasioned merely by reports. There was no proof that the opinion proceeded from ill-will to the defendant, or that it was so firmly settled as to justify a belief that the juror

would not do the defendant justice. The challenge, there--
fore, could not be sustained."

In *Maize* v. *Sewell*, 4 Blackf. 447, which was a civil action,
the defendant objected to a juror upon the ground that he
had formed and expressed an opinion in the cause, and asked
the leave of the court to ask such juror under oath whether
he had formed and expressed an opinion; but the court over-
ruled the motion, and would not permit the question to be
asked, and retained the juror on the jury. The court said it
was not competent at common law to ask a juror in a crimi-
nal case whether he had formed and expressed an opinion, as,
in such case, a person was guilty of a misbehavior and a
thing dishonorable, to form and express an opinion; but
that it was made competent by statute to ask such questions
in both civil and criminal causes. The court said:

" We regard the law as being now well settled, that it is a
good cause of challenge to a juror that he had expressed an
opinion on the merits of the cause he is called upon to try."
The case of *McGregg* v. *The State, supra,* was referred to.

In *Van Vacter* v. *McKillip,* 7 Blackf. 578, the juror
answered, " that he did not know but that he had formed an
opinion in the case from rumor," but " that he thought his
opinion would readily yield to the evidence, if it should dif-
fer from the rumor he had heard." The court referred to
*McGregg* v. *The State, supra,* and said:

" We adhere to the decision there made, that an opinion,
founded merely on report, where there is no proof of ill-will
to either of the parties; or where the opinion is not so firmly
settled as to justify a belief that the juror would not do jus-
tice in the case; it is not sufficient to disqualify him from
serving."

*Goodwin* v. *Blachley,* 4 Ind. 438, was a civil action. One
of the jurors, being sworn and examined touching his com-
petency, said he had heard a statement of the facts from a
part of the witnesses, " but that his opinion would readily
yield to the evidence, and he believed he could hear and
determine the case as impartially as if he had never formed

Scranton *v.* Stewart *et al.*

any opinion on the subject; that if the evidence should turn out as he had heard it, he thought his opinion would be the same as formerly; but that he would determine the case from the evidence here, and not from what he had previously heard." Upon this profession of impartiality, the objection to his competency was overruled. This court said:

" The purity and proximate correctness of judicial proceedings depend chiefly on the impartiality, or, as the books term it, the indifference, of those whose duty it is to find the facts. These once settled, there is seldom any doubt about the law. When the jury system is eulogized, it means, of course, a jury composed of men of fair, unprejudiced minds. It goes on the presumption that passion, ill-will, preconceived opinions, and everything unfavorable to a candid exercise of the judgment, is to be excluded from the jury box. Impartiality can hardly be expected from the clearest intellect, if embarrassed in its action by an opinion both formed and expressed.

" Some authorities say the test is, whether the opinion be fixed or trivial. But human ingenuity cannot devise means to measure the degree of tenacity in each case. Nor is the manner of forming the opinion, whether hasty or deliberate, by any means a sure test. The safe rule—that which will more certainly secure an impartial trial—is to regard those jurors only as competent who are altogether indifferent. From such a rule, in most of the counties containing from one to two thousand qualified jurors, with the supplemental aid of change of venue, etc., no practical inconvenience can ordinarily result. And if there should, the pure and impartial administration of justice is the great end to be attained, at whatever cost or inconvenience.

" In the case at bar, the juror had both formed and expressed an opinion on the merits of the cause, and that, too, on information derived from the witnesses. Few minds could act under such impressions with entire fairness. However honest, the juror carried with him into the box a subtle and active element, not legitimately derived from

the evidence. That the juror did not, after all, distrust himself, was the most cogent reason why the parties litigant should distrust him. Had he qualified his declared intention of being impartial with any doubt of his ability to be so, his intelligent candor might well have commended him to both parties as a safe juror; though it might not have restored his competency, if the objection was urged."

In *Morgan* v. *Stevenson*, 6 Ind. 169, the juror answered that he had not formed or expressed an opinion in the case, nor had he formed or expressed any opinion as to which of the parties should succeed; that his mind was free to decide the case according to evidence, though he had formed an opinion as to some matters in controversy. The court say:

"If a person called as a juror has formed an opinion on the merits of the cause, such as would not readily yield to the testimony offered, he would be incompetent. His opinion must, however, be fixed and settled; for if merely light and transient, such as would leave the mind open to a fair construction of the testimony, it would constitute no sufficient objection to the juror. 1 Burr's Trial, 416." The court, after reviewing the cases hereinbefore cited from 4 and 7 Blackf. and 4 Ind., say:

"In these cases, it will be seen that the reason which led to the pre-opinion of the juror is distinctly stated. But in the present case, the person called simply states that 'he had formed an opinion as to some of the matters in controversy,' but 'that his mind was still free to decide according to the evidence.'

"The latter statement, it is true, would have no weight, if it appeared that his opinion was the result of ill-will to one of the parties, or grounded upon a knowledge of the facts of the case. But here the proposed juror, in effect, explicitly declares that he stands indifferent. And it seems to us, that in the absence of all evidence leading to the belief that the opinion so formed would not have readily yielded to the testimony to be given on the trial, we must believe what he has said on the subject. Unless this be done, the propriety

of examining a juror at all on his *voire dire* is not obvious."

In *Rice* v. *The State*, 7 Ind. 332, the court say:

"The jurors objected to by the prisoner and declared competent by the court, stated, upon examination, that they had heard considerable talk about the case, and had read the newspaper accounts of it; that they were rather inclined to think, if what they had read was correct, the defendant was guilty; that they had never talked with any of the witnesses, had never formed or expressed an opinion, had no ill-will against the defendant, and could give him a fair trial according to the law and the evidence.

"We have no doubt of the competency of these jurors. *Morgan* v. *Stevenson*, 6 Ind. 169.

"In this country, where education and reading are so general, the facilities of intercourse so great, and the diffusion of information by the press is so speedy and universal, it would be almost impossible to procure a jury, composed of men of common intelligence—of sufficient, indeed, to render them competent—who had no knowledge of important events occurring in the State. Again, belief is not an act of volition. The mind yields of necessity to evidence. No compulsion of authority, or force of will, could make a man believe white was black. Either, or prejudice, might induce him to say he believed this or that, but the expression would be a falsehood, if it differed from the involuntary conclusion of his mind upon the evidence. Galileo, on the 20th of June, 1633, solemnly admitted upon his knees before the inquisition, assembled in the convent of Minerva at Rome, that the doctrine of the earth's motion was false, and even yet, while rising, whispered to a friend, 'It moves for all that.' The mind, therefore, of an honest, unprejudiced juror will necessarily be forced to its conclusion by the evidence adduced upon the trial of the cause in which he sits.

"Again, a juror cannot convict, in all cases, upon mere belief. It must be a belief, founded upon legal evidence, of guilt according to the rules of law. It is probable a juror not unfrequently retires from the box after agreeing to a

verdict of acquittal, for want of legal proof of guilt, believing, at the same time, morally, that the defendant was guilty. What is wanted, therefore, to constitute a reasonably unexceptionable juror is capacity, honesty, independence, and freedom from prejudice and opinion founded upon the particular evidence to be given in the cause. It does not appear that the jurors objected to in this case did not possess these requisites. Entire freedom from all knowledge of the case would not be undesirable, if it could be attained in connection with the requisite capacity. But that, in this country, would generally be impossible.

"Here the jurors had not talked with the witnesses, and, hence, had no opportunity to form opinions on the testimony to be produced on the trial. See *Goodwin* v. *Blachley*, 4 Ind. 438."

In *Bradford* v. *The State*, 15 Ind. 347, it was said:

"It is argued that, under our statute, a juror who has formed or expressed an opinion as to the guilt or innocence of a person charged with a crime, is incompetent to sit as a trier; totally and absolutely so. And it is earnestly urged that the statute is, in that respect, different from others anterior thereto, and that it precludes the court from the exercise of any discretion in accepting or rejecting a juror, who states that he has formed or expressed an opinion; and that it matters not as to the source from which the information upon which the opinion was so formed was derived."

The court, after quoting section 84 of the criminal code, say:

"In our opinion the proper construction to be placed upon this statute is, that, in ordinary cases, the parties must avail themselves of the right to examine and challenge jurors, either peremptorily or for cause; if for cause, the court, after hearing the examination, etc., exercises a sound, legal discretion in determining as to the competency of the juror. One of the disabilities of a person called is the formation or expression of an opinion, etc. It is so declared by the statute. The legal doctrine thus embodied in the statute

had always been acted upon in practice in this State.   To determine whether the sound, legal discretion vested in the judge has been abused or properly exercised, we must, in each instance, examine the question whether the opinion of the person offered had been formed upon such information, or information derived from such a source, as would probably make such an impression as might influence him, after hearing the facts detailed on the trial.   In determining this question, the court below, and this court, should be governed by the legal rules applicable in such case, and which have obtained in reference to like cases, before the enactment of the statute.

"An opinion based upon mere rumor, not from a knowledge of the facts, from hearing evidence, or from conversing with witnesses, unless firmly fixed, has been repeatedly held to be no cause for a peremptory challenge, before the passage of this statute."

In *Fahnestock* v. *The State*, 23 Ind. 231, this court, ELLIOTT, J., speaking for the court, said:

"The object of both the constitution and the statute is evidently to secure to the accused a fair and impartial trial, by unprejudiced jurors.   The mind should be free from any previously formed positive conclusions, as to the guilt or innocence of the accused, or the material facts involved in the case; it should be in a condition to receive, judge of, and apply the evidence to the alleged facts, with the same freedom of will that would be presumed to exist if the juror had for the first time heard of the case in the jury box.   If from previously formed opinion, it would require either more or less evidence to satisfy the mind of the existence or non-existence of the material facts involved, then the juror is not impartial, and is therefore incompetent.   The commission of a crime of the character of the one charged in this case, naturally produces more or less excitement in the vicinity of its enactment, and with the various means of speedy communication existing almost everywhere in this country, intelligence of the act is very soon generally disseminated

throughout the immediate community, and it would in many cases be impossible to find a jury, composed of men of ordinary intelligence, who had never heard of the case before being called into the jury box. It is often impossible to avoid the formation of an opinion of some kind from mere hearsay or rumors. Such opinions, however, where the facts are only judged of by mere rumor, or the relation of persons not claiming to have any personal knowledge of them, would make but a slight impression on a mind of ordinary intelligence, and could scarcely form an impediment to a fair and proper conclusion from the legal evidence given on the trial."

In *Burk* v. *The State*, 27 Ind. 430, it was held that a juror was not incompetent who, when interrogated as to his competency, answered that he had formed an opinion as to the guilt of the defendant, if what he had heard was true.

In *Morgan* v. *The State*, 31 Ind. 193, on the examination of persons called as jurors to try an indictment for murder, as to their competency, certain ones of the panel answered, that they had formed opinions as to the guilt or innocence of the defendant, from rumor and newspaper statements on that subject. Upon further examination, each of said persons answered, that it would require neither more nor less evidence to satisfy him of the existence or non-existence of the material facts involved in the case by reason of his so already formed opinion; and it was held that such persons were competent jurors; and the ruling in *Fahnestock* v. *The State*, *supra*, was expressly adhered to.

In *Clem* v. *The State*, 33 Ind. 418, the rulings in *Fahnestock* v. *The State*, *supra*, and *Morgan* v. *The State*, *supra*, were adhered to, and the court added:

"It may be regarded as settled, that the opinion which, under our statute, renders a juror incompetent is not that vague and unsatisfactory impression which the mind receives at second hand, and which vanishes in the presence of authentic testimony, and upon which no man of common sense would take responsible action."

In *Cluck* v. *The State*, 40 Ind. 263, the facts in reference to the competency of the juror were very similar to those in *Morgan* v. *The State, supra,* and the ruling was the same.

In our opinion, the rule laid down in *Fahnestock* v. *The State, supra,* is more accurate, comprehensive and practical than that stated in any of the preceding cases, and should be regarded as the settled rule in this State.

We think it plainly appears from the foregoing authorities, that the jurors in question were competent, and that the court committed no error in overruling the objections urged to them.

The fourth reason assigned for a new trial is, that the court erred in overruling the objection urged to the competency of Rodman L. Davis as a witness in this cause.

The appellant sought to recover the land in controversy, upon the ground that when she and her husband sold and conveyed the same to the appellee she was an infant married woman. The appellee, among other defences, relied upon a ratification of her contract after her arrival at age, and, as tending to prove such ratification, Mr. Davis was introduced to prove certain acts, and to detail a conversation had with her in reference to the sale of the furniture of a hotel to Mr. Grant. The appellant objected to the competency of Mr. Davis, upon the ground that when such acts were performed and conversation had, he was the attorney of Mr. Scranton, and that his information was derived from Mrs. Scranton solely in consequence of the confidential relation which he sustained to Mr. Scranton and wife. The objection was overruled, and an exception taken. Mr. Davis testified that he was acting as the attorney of Mr. Scranton; that Grant and Scranton asked him to draw up an agreement and mortgage, which he did; that they were at the hotel, and, at the request of Grant and Scranton, he went into another room to see Mrs. Scranton about certain articles of furniture, which Grant claimed went with the other furniture, and which Scranton denied, upon the ground that such articles belonged solely to Mrs. Scranton; that he informed Mrs. Scranton that

the trade was about to fall through in consequence of such differences, and inquired of her what she said, to which she answered, for Mr. Scranton to do as he liked or thought best, and she would consent to whatever he did in the premises. Davis also testified that he was one of the attorneys for defendant Stewart in the case then on trial. Upon cross-examination, he stated that he had, at such time, a claim against Scranton for fees as an attorney, amounting to one hundred and twenty-five dollars; that Grant paid him two hundred dollars, being a part of the purchase-money for the hotel furniture, a part of which he paid to Scranton, but that he could not tell how much he retained, or how much he paid over. He further testified: "I talked the matter over with Mr. Scranton before he saw Mr. Grant, and he took advice from me about the trade. I advised them, I suppose, as a financier."

We think it very plainly appears that Mr. Davis was acting as the attorney of Mr. Scranton at the time he had the conversation with Mrs. Scranton, and that she conversed with him in that capacity, and whatever information he derived from her was obtained by reason of the confidential relations which he sustained to Mr. Scranton. The question which we are required to decide is, whether it was competent for Mr. Davis to detail as a witness, in an action brought by Mrs. Scranton in reference to her separate real estate, a conversation which he had with her as the attorney of her husband in relation to personal property which had been purchased with money derived from the sale of her separate real estate, to recover which the present action was brought.

We are of opinion that Mr. Davis should be regarded as the attorney of both Mr. and Mrs. Scranton, and that the communication made by Mrs. Scranton was privileged. Taylor, in his very accurate and valuable work on evidence, in vol. 1, p. 826, says:

"So, if a wife were induced by her husband to deal with her separate interest under the advice of her husband's attor-

ney, such attorney would be regarded by the client as acting for both husband and wife; and consequently, in the event of any dispute arising between the married couple, each party would be entitled to call for the production, and to have full inspection, of all documents that might have come into the possession of the attorney in the course of the transaction."

The same doctrine is laid down in *Warde* v. *Warde*, 3 Macn. & G. 365, which overruled the decision of Lord Cranworth in the same case, reported in 1 Sim. N. S. 18. The Lord Chancellor says:

"This case may be important in its consequences to married women, who when living with their husbands upon terms of affection and confidence are most likely to act upon the representations and advice of their husband's solicitors in dealing with their property and legal rights, and must often be precluded from resorting to other advice, without a breach of domestic harmony and peace; and whenever the husband and wife have distinct interests, and the wife is induced in dealing with those interests to act under the advice of an attorney employed and paid by the husband, I should feel bound to hold that the attorney must be deemed to act as the attorney of both husband and wife, and that each of them would have the right to call for the production and have full inspection of all documents that should come into the possession of the attorney during such employment, relating to the transactions and to the advice given the wife."

We are of opinion that the court erred in admitting the testimony of Mr. Davis, as he is to be regarded as the attorney of both Mr. and Mrs. Scranton.

The fifth reason for a new trial was in these words:

"That the court erred in permitting the defendant upon the trial of said cause to introduce as evidence against the plaintiff the record of the deed from Richard Martin and

wife to Levi W. Scranton, and the deed of William Schoop-snire and wife and Mahala Scott to Levi W. Scranton.

The seventh and ninth reasons for a new trial call in question the action of the court below in permitting the defendant to prove the acts and declarations of the plaintiff, as tending to prove a ratification of her conveyance to the defendant; and as the same objection is urged to the admission of such evidence as is urged to the admission of the deeds mentioned in the fifth cause for a new trial, we will consider such reasons together.

As a statement of the facts of the case is essential to a proper understanding of the questions relating to the admission of the above evidence and to several other questions which arise in the record, we will, at this time, make a brief summary of the material facts as they appear in the record.

The record in this case presents the following facts:

The appellant, a daughter of Joseph P. Richardson, late of Ohio county, Indiana, was born on the 12th day of January, 1846, and was married to Levi W. Scranton on the 16th day of October, 1862. At the time of her marriage, she was seized in fee simple of a tract of land situate in Ohio county, Indiana, containing about forty-five acres, and a small undivided interest in another tract, subject to the dower estate of her mother. On the 2d day of March, 1864, when she was in the nineteenth year of her age, she and her husband conveyed the land so inherited from her father to the appellee George W. Stewart, for the consideration of two thousand five hundred dollars; two hundred and fifty dollars of which was paid at the time, and promissory notes were at the time given by Stewart to Levi W. Scranton for the balance of the purchase-money, payable as follows:

Five hundred dollars on the 1st day of March, 1865; five hundred dollars on the 1st day of March, 1866; five hundred dollars on the 1st day of March, 1867; five hundred dollars on the 1st day of March, 1868; and two hundred and fifty dollars on the 1st day of March, 1869; all of the notes drawing interest from the 26th day of November,

1863; and there was also a mortgage on the real estate conveyed to secure their payment.

The deed, notes and mortgages were all executed at the same time, in the presence of Mrs. Polly Richardson, the appellant's mother, and other members of her family, and the mother signed the deed, and the justice who took the acknowledgment certified that " the said Polly Richardson declares before me that she is the mother of the said Arabella Scranton, and that she believes the above conveyance is for the benefit of said Arabella Scranton, and that it would be prejudicial to her, said Arabella, and her husband, Levi W. Scranton, to be prevented from disposing of the land above conveyed." This feature, while it manifestly resulted from a mutual misapprehension of the law, is still evidence of the good faith and fairness of the transaction.

After the sale of the land, the appellant and her husband continued to reside in the county of Ohio, and within six miles of the land, up to the time of the trial of this cause in the Ohio Circuit Court, and a great portion of the time were carrying on a hotel in Rising Sun, the county seat of that county.

At the time of the conveyance of the land to Stewart, it was wholly unimproved. He took possession of the land, cleared off portions of it from time to time, in all from ten to twelve acres, paid the taxes, and as the notes given for the purchase-money became respectively due, paid them off, Levi W. Scranton having assigned the notes, or a part of them, to different persons, to whom the payments were made.

Mrs. Scranton became twenty-one years of age on the 12th day of January, 1867. At that time three of the notes, amounting in the aggregate to one thousand two hundred and fifty dollars, one-half of the purchase-money, were still unpaid. The last payment was made about the 1st day of March, 1869.

On the 16th day of February, 1870, Mrs. Scranton, through I. G. Foster, Esq., then an attorney at law of the Ohio Circuit Court, brought her action in that court against

her husband, and alleged in her complaint that after her marriage she sold out her interest in her father's estate and placed the money in the hands of her husband, to purchase a farm; that her husband purchased the farm as directed, but, without her knowledge or consent, he took the title in his own name; that he afterwards sold the farm and appropriated a part of the proceeds to the purchase of certain personal property, setting it forth, to be used in a hotel in Rising Sun; "and the plaintiff avers that she is a married woman over the age of twenty-one years, and the wife of defendant; that said property above described was purchased with money arising from her sole and separate property, which came to her from the estate of her father, and that the same of right belongs to her as a part of her said separate property; that the said defendant was an agent merely in the management of her separate property; and that she has never in anywise surrendered her right to said property and her interest therein."

And she prays judgment that she be invested with the title to the personal property set forth, "as her absolute property in law and equity," and she demands judgment also for one thousand eight hundred and forty-five dollars and forty-eight cents, the residue of her said separate property.

Levi W. Scranton entered his appearance to this action through R. L. Davis, Esq., an attorney of that court, and confessed the facts set forth, and, on the 24th day of February, 1870, the cause came on for hearing. "And the court, being sufficiently advised in the premises, do find that the matters and things set forth and alleged .in the complaint are true. It is therefore adjudged," etc., " that the personal property set forth" (describing it) " vest in the plaintiff, Arabella Scranton, as her absolute property both in law and equity, and that she take and hold the same as her sole and separate property, and that the same be subject to her control. It is further considered by the court that the plaintiff recover of the defendant the sum of eighteen hundred

and fifty-five dollars and forty-eight cents, so found to be due her by said complaint, and also her costs and charges in this behalf laid out and expended."

This judgment was rendered on the 24th day of February, 1870, and on the 28th day of March, 1870, Levi W. Scranton, with the consent of the appellant, sold the hotel property, or rather a part of it, to B. I. Grant, for seven hundred dollars, three hundred dollars of which was paid by Grant to R. L. Davis, Esq., and two notes and a mortgage given by Grant on the property to the appellant for deferred payments of two hundred dollars each; and when Grant paid the notes, Mrs. Scranton satisfied the mortgage.

On the 22d day of July, 1870, the appellant gave Geo. W. Stewart notice of her disaffirmance of the deed, and shortly after brought her action against him and his tenant, Ricketts, to recover the land. On the 17th day of August, 1870, Geo. W. Stewart filed his answer, the second paragraph of which set forth, among other things, in bar of the action and by way of estoppel, the record of the action of the appellant against her husband; and on the next day, the 18th day of August, 1870, Mrs. Scranton instituted an action in the Ohio Circuit Court against her husband, to annul the former judgment, to which her husband appeared and confessed the facts set forth—that the former proceeding was a fraud—and on the same day a judgment annulling the judgment of the 24th of February was entered.

Subsequent to the conveyance of the land in dispute to Stewart, Levi W. Scranton purchased other real estate, and gave in part payment some of the notes which Stewart had executed. Deeds were made to Scranton, and he and his wife executed mortgages to secure the purchase-money, and these were the instruments referred to in the fifth reason for a new trial.

We think the evidence referred to in the fifth, seventh and ninth reasons for a new trial was admissible as tending to establish a ratification of the conveyance of the land by Mr. Scranton.

The sixth, eleventh and fourteenth reasons for a new trial are abandoned by counsel for appellant, for the reason that no exceptions to the rulings complained of therein appear in the record.

The tenth is, that the court erred in permitting the defendant to read in evidence the transcript of the judgment in the case of the appellant against her husband, Levi W. Scranton. The objection urged to the competency of such evidence was, that such judgment had been, prior to the time it was offered in evidence, annulled and set aside, upon the ground that it had been procured by fraud. It is contended by counsel for appellant, that, as both judgments were in the court where the case in judgment was being tried, it was solely a question of competency to be determined by the court upon an inspection of the record. Counsel for appellee insists that, as the judgment was valid upon its face, although it might be void by reason of fraud in procuring it, it was competent evidence to go to the jury, and that it was a question of fact to be determined by the jury upon all the evidence whether such judgment had been annulled and set aside. The court is of the opinion that it was a question of law, as to the competency of the transcript, to be determined by the court, and that it erred in admitting the same in evidence, as it plainly appears from both records that the first judgment was procured by fraud.

The thirteenth, fourteenth and fifteenth instructions are complained of by counsel for appellant, and they are as follows:

"One of the questions in this case is, whether the plaintiff, Arabella Scranton, after she became twenty-one years of age, by any act, or omitting to do some act required of her by good faith, has affirmed the deed, which it is alleged she and her husband made to George W. Stewart, while she was under twenty-one years of age. And you should, in deciding that question, consider all the testimony which is before you, and if you find from the evidence that at the time the plaintiff reached twenty-one years of age, there was still

payable of the purchase-money of the land in question, so deeded by the plaintiff and her husband, twelve hundred and fifty dollars, and that from the time she reached twenty-one years of age, and up to the time she brought this suit, she lived within six miles of the land in question, and frequently saw the defendant Stewart, and during all this period Stewart was in possession of the land in question and paying the taxes thereon, and was, during this period, after she reached twenty-one years of age, paying off the said balance of the purchase-money, and that after the said purchase-money was paid, Mrs. Scranton brought her suit in this court against her husband, alleging that he had, as her agent or trustee, received the purchase-money of said real estate, and invested part thereof in purchasing certain personal property, then in the City Hotel, in Rising Sun, Indiana, and demanding judgment for such property, and also a judgment for the balance of the money her husband had so received, and recovered in this court, in that action, judgment for such personal property and money, and that all this occurred with the knowledge of the plaintiff, and during this period the plaintiff gave no notice to the defendant Stewart of her intention to disaffirm said deed, and gave no such notice until more than three years after she reached the age of twenty-one years, you may find that the plaintiff is estopped from disaffirming said deed; and if you so find, you shall find for the defendant; and if you find that after the commencement of this suit, and after the defendant Stewart had filed his answer, Mrs. Scranton, on the next day, filed in this court her complaint to set aside said judgment so recovered against her husband, and at the same time her husband filed his answer, confessing the allegations of her complaint, and by the agreement of Mrs. Scranton and her husband, on the same day, a judgment was entered in this court to set aside said former judgment against her husband, you should consider all such facts, and all other facts which have been proven, in determining whether such last named judgment was obtained and recovered in good faith or not; and

if you find that such last named judgment was fraudulently obtained, in such case you should consider the said first judgment as in full force.

"14. The deed of an infant is not void, but voidable only; and if the jury find from the evidence in this case that the plaintiff, while she was under the age of twenty-one years, joined with her husband in the execution of a deed conveying the land in controversy to the defendant, and that such conveyance was made for a valuable and adequate consideration paid by the defendant, said defendant would hold said real estate as a *bona fide* purchaser, and said deed would not be void, and the rights of the defendant, under said deed, could only be defeated by a disaffirmance of said deed by the plaintiff after she arrived of age, under circumstances that would not work a fraud upon the defendant.

"15. If the jury find from the evidence that twelve hundred and fifty dollars of the purchase-money of said real estate became due after the plaintiff arrived at the age of twenty-one years, and that such facts were known to the plaintiff before payment of said part of said purchase-money was made by the defendant, and if the jury further find that the plaintiff suffered and permitted the defendant to pay said sum of twelve hundred and fifty dollars, or part and parcel of this purchase-money of said real estate, after the said plaintiff became of age, and that the plaintiff, having the opportunity so to do, failed and neglected to inform defendant of her intention to avoid and disaffirm said deed, such failure of plaintiff to notify defendant of her intention to disaffirm said deed would be a fraud on the defendant and would estop her from afterwards disaffirming said deed, and your verdict should be for the defendant."

Three questions are presented for our examination and decision by the foregoing instructions:

1. Is the deed of an infant married woman void? or is it voidable merely?

2. Was the appellant required, after she arrived at the age of twenty-one years and while she remained under cov-

erture, to disaffirm her conveyance to the appellee? and, if she was, did she, within a reasonable time, disaffirm such conveyance?

3. Are the facts recited in the thirteenth or fifteenth instructions sufficient to estop the appellant from disaffirming her said conveyance and recovering back the real estate in controversy?

The court below, in the fourteenth instruction, charged the jury that the conveyance of the appellant was voidable merely. It is broadly admitted by counsel for appellant that it is squarely settled by the case of *Law* v. *Long*, 41 Ind. 586, that the contract of an infant is voidable merely; but it is contended that, as the appellant, at the time of the conveyance in question, was not only an infant, but a married woman, her said conveyance was absolutely void and passed no title to the appellee, and hence that she was not required to disaffirm her conveyance.

It is provided by section 6 of the act concerning real property and the alienation thereof, 1 G. & H. 258, that "the joint deed of the husband and wife shall be sufficient to convey and pass the lands of the wife, but not to bind her to any covenant therein."

The fifth and sixth sections of the act touching the marriage relation are as follows:

"Sec. 5. No lands of any married woman shall be liable for the debts of her husband; but such lands and the profits therefrom shall be her separate property, as fully as if she was unmarried; *Provided*, that such wife shall have no power to encumber or convey such lands, except by deed, in which her husband shall join.

"Sec. 6. The separate deed of the husband shall convey no interest in the wife's land." 1 G. & H. 374–5.

It has been repeatedly held by this court, that the capacity of a married woman to convey her real estate is the creature of statute law; and that, to make her deed effectual to convey her lands, the forms and solemnities prescribed by the statute must be pursued. The statute imperatively provides

that the wife cannot encumber or convey her lands, except by deed, in which her husband shall join. The separate deed of the wife or of the husband is absolutely void, and neither passes the title to, nor creates an equity in favor of, the grantee. It is as firmly settled that the joint deed of husband and wife is valid and passes the title to the lands of the wife, though she is not bound by the covenants contained therein. *Davis* v. *Bartholomew*, 3 Ind. 485; *Woods* v. *Polhemus*, 8 Ind. 60; *Reese* v. *Cochran*, 10 Ind. 195; *Johnson* v. *Rockwell,* 12 Ind. 76; *Blackleach* v. *Harvey*, 14 Ind. 564; *Baxter* v. *Bodkin*, 25 Ind. 172; *Stevens* v. *Parish*, 29 Ind. 260; *Shumaker* v. *Johnson*, 35 Ind. 33; *Mattox* v. *Hightshue*, 39 Ind. 95; *Hasheagen* v. *Specker*, 36 Ind. 413; *Kinnaman* v. *Pyle*, 44 Ind. 275.

In was held in *Davis* v. *Bartholomew* and in *Johnson* v. *Rockwell, supra*, that, to render the joint deed of husband and wife valid, it was necessary that it should be acknowledged in the mode prescribed by the statute; but in *Hubble* v. *Wright*, 23 Ind. 322, it was held that under the statute of 1852, no difference is made in the mode of executing and acknowledging deeds by married women, and by persons not under disability; that a mortgage executed by a married woman jointly with her husband is valid between the parties as to her without being acknowledged; and that the power of a wife to encumber or convey her land is only limited by requiring her husband to join in the deed, etc.

The ruling in the above case, upon the points stated, has been followed in the cases of *Alsop* v. *Hutchings*, 25 Ind. 347; *Routh* v. *Spencer*, 38 Ind. 393.

Under the ruling in the last three cases above cited, the joint deed of husband and wife, as between them and the grantee, will be valid, although not acknowledged by the wife.

But it is earnestly contended by counsel for appellant that there is no statute in this State which empowers an infant married woman to convey her real estate. Section 6, *supra*, says the joint deed of husband and wife shall be sufficient

to convey and pass the lands of the wife. In the fifth section the language is, "no lands of any married woman," etc. Nothing is said about infancy in connection with the power to convey. Any married woman may convey her lands, if her husband joins with her. If it be true that the statute does not embrace an infant married woman, then it must result that all conveyances by married women who are also infants are absolutely void, but it has been repeatedly held that the deed of an infant married women, where her husband joins with her, is not void, but is voidable merely.

*Doe, ex dem. Moore,* v. *Abernathy,* 7 Blackf. 442; *Hartman* v. *Kendall,* 4 Ind. 403; *Pitcher* v. *Laycock,* 7 Ind. 398; *Johnson* v. *Rockwell,* 12 Ind. 76; *Chapman* v. *Chapman,* 13 Ind. 396; *Miles* v. *Lingerman,* 24 Ind. 385; *Law* v. *Long,* 41 Ind. 586.

At the time the deed in question was executed, the appellant was both a *feme covert* and an infant. The infancy of the plaintiff presents a distinct question from that of her coverture. Each disability must be considered by itself, and neither can derive any additional force from being coupled with the other. Under our statute, a *feme covert* can not convey her lands, unless her husband joins with her in the deed, and unless the deed is executed in the mode prescribed by the statute; and when a deed is thus executed the disability of coverture is removed, and that of infancy alone remains. The deed of a married woman is void, when the statutory requirements are not complied with. The deed of an infant, whether married or unmarried, is not void, but voidable merely.

In addition to the adjudged cases in this court heretofore cited, we cite, as sustaining the above propositions, the following adjudications in other states:

*Bool* v. *Mix,* 17 Wend. 119; *Webb* v. *Hall,* 35 Maine, 336; *Phillips* v. *Green,* 3 A. K. Marshall, 7; *Prewit* v. *Graves,* 5 J. J. Marshall, 114; *Milner* v. *Turner,* 4 T. B. Mon. 240; *Oldham* v. *Sale,* 1 B. Mon. 76; *McIlvaine* v. *Kadel,* 3 Robertson, N. Y. 429; *Ball* v. *Bullard,* 52 Barb.

141; *Matherson* v. *Davis,* 2 Coldwell, 443; *Greenwood* v. *Coleman,* 34 Ala. 150; *Card* v. *Patterson,* 5 Ohio St. 319; *Youse* v. *Norcoms,* 12 Mo. 549; *Kilgore* v. *Jordan,* 17 Texas, 341.

We proceed to the examination of the second proposition stated. There is a well defined distinction between the acts to be done by the infant on arriving at age, where the contract is executory, and where it is executed. When the contract is executory, such as a promise to pay money, the infant must, to render him liable thereon, on arriving at full age, expressly ratify it, and expressly promise to pay it. When the act is executed, as where a deed has been made, the infant must, on arriving at full age, do some act to disaffirm the contract. In other words, where the contract is executory, there must be an affirmance, to render the contract valid; when it is executed, there must be a disaffirmance, to avoid the operation of the deed. *Fetrow* v. *Wiseman,* 40 Ind. 148; *Law* v. *Long,* 41 Ind. 586. The deed of the appellant to the appellee, being voidable merely, vested the title to the land in the appellee, subject to the right of disaffirmance on arriving at age, and the title remained vested in the grantee, until divested by some act of the maker of the deed. In *Miles* v. *Lingerman,* 24 Ind. 385, it was said: " Under our present statute, the wife may bring her action in regard to her own estate as though she were a *feme sole;* still our legislature has seen proper to continue the protection formerly accorded to her as a *feme covert,* although, as to her power to disaffirm her contracts made during minority, her legal disability has been removed. She has the legal power to disaffirm her contracts made during infancy, and to bring her action without the assent, and even against the will, of her husband. But the legislature has not required her to exercise that power during coverture."

If the word " power " in the last sentence is limited to the bringing of the action, it correctly states the law; but if it embraces the disaffirmance of the contract, then it is not the law. Upon a careful review of the authorities and upon

full consideration, it was held in *Law* v. *Long, supra,* that an infant *feme covert* who had made a conveyance of her lands during infancy was required to disaffirm such conveyance within a reasonable time after arriving at full age. The well defined distinction between laying the foundation to bring an action and the actual bringing of the action, as laid down in *Potter* v. *Smith,* 36 Ind. 231, was reaffirmed. We think the appellant was required to disaffirm her conveyance within a reasonable time after she arrived at age. The appellant, within three years and a half after arriving of age, gave to the appellee written notice that she disaffirmed the contract. This was a proper mode of disaffirming. Entry is not required. The disaffirmance must precede the bringing of the action. *Law* v. *Long, supra.* Was the notice given in a reasonable time? In *Doe* v. *Abernathy,* 7 Blackf. 442, it was held that five years was within a reasonable time. In *Hartman* v. *Kendall,* 4 Ind. 403, it was held that thirteen years was an unreasonable delay. In *Law* v. *Long, supra,* it was said that the authorities all agree that the contract must be disaffirmed within "a reasonable time" after the infant arrives at age, but there is great diversity of opinion as to what is "reasonable time." An examination of the above authorities will show that the time required ranges from one to twenty years, according to the peculiar circumstances of each case and the views of different judges and writers.

We think the disaffirmance was within a reasonable time.

It remains to inquire whether the appellant was estopped by her acts from disaffirming her contract. Let us inquire what acts are claimed to effect an estoppel. We think we should disregard the judgment rendered in favor of the appellant and against her husband and the subsequent judgment setting the same aside, the transcripts of such judgments having been improperly permitted to go to the jury.

1. That when the appellant reached full age there was due on the notes given her husband for said land the sum of twelve hundred and fifty dollars, and that such sum was

paid to Mr. Scranton after her arrival at age, and before her disaffirmance of the contract.

2. That she resided within six miles of the land in dispute from the time she arrived at age up to the commencement of the action.

3. That she frequently saw the appellee from the time she arrived of age, and knew that he was paying her husband the balance due on said purchase-money, and failed to inform the appellee of her intention to disaffirm said contract.

4. That the husband of appellant, with the proceeds of such sale, purchased other property and took the title in his name, and that for a balance on such purchases the appellant joined with her husband in mortgaging the property so purchased.

It is settled by the adjudged cases in this court, that a married woman may be estopped by matters *in pais*. *Gatling* v. *Rodman*, 6 Ind. 289; *Peck* v. *Hensley*, 21 Ind. 344; *Law* v. *Long*, 41 Ind. 586.

Are the above recited acts sufficient to work an estoppel? The most material act relied upon is, that when the appellant came of age there was due her husband, upon the notes given for the purchase-money of the land in dispute, the sum of twelve hundred and fifty dollars, and that she remained silent and permitted the appellee to pay such sum.

To constitute an estoppel in the present case, it must appear that the appellant knew that the purchase-money was unpaid, and that the appellee was ignorant of the fact that the appellant was an infant when the deed was made.

The appellant testified that the appellee was her brother-in-law; that for some time previous to making the deed they had been, and at the time of making it were, enemies and did not speak to each other; that she never had any conversation with the appellee about the sale of the land, the contract having been made by her husband; that she did not know whether it had been sold for cash or on credit; and that she had no knowledge that, when she arrived at age, there was any part of the purchase-money remaining unpaid.

There is some conflict in the evidence as to whether the notes and mortgage given by Stewart to Scranton were read over in the presence of the appellant. The appellant testified that she went into the room where the deed was being made, and signed and acknowledged it, and immediately left the room without hearing any other paper read or talked about. Two of the witnesses were of opinion that she was present when the notes and mortgage were read, but they were not positive. However this may be, there is no evidence which shows that the appellant knew that any portion of the purchase-money was unpaid when she arrived of age. Upon this point her testimony stands undisputed. On the other hand, the evidence tends very strongly to prove that the appellee knew, when he took a conveyance from the appellant and her husband, that she was under the age of twenty-one years. He was her brother-in-law. They lived close together. In the acknowledgment of the deed under which the appellee claims title is the following:

" And the said Polly Richardson declares before me, that she is the mother of the said Arabella Scranton, and that she believes the above conveyance is for the benefit of said Arabella Scranton, and that it would be prejudicial to her, the said Arabella, and her husband, Levi W. Scranton, to be prevented from disposing of the land above conveyed and described; and they, and each of them, voluntarily acknowledge the execution of the annexed deed."

The above was inserted in the belief that the conveyance in question was governed by section 24 of the act concerning conveyances, 1 G. & H. 264. That section provides that a married woman who is over the age of eighteen and under the age of twenty-one years, may, by the consent of her father, or mother, or guardian, convey her interest in her husband's lands. This section has no application where the wife joins with the husband in the conveyance of her own lands. *Law* v. *Long, supra.*

If the facts stated do not amount to positive knowledge on the part of the appellee, they were amply sufficient to put

him on inquiry. One who claims under a deed is charge-
able with notice of, and is bound by, the recitals thereof.
*Brannon* v. *May*, 42 Ind. 92.

The thirteenth instruction entirely ignores the questions
of knowledge on the part of appellant and ignorance of the
facts on the part of the appellee.

The fifteenth instruction charges the jury that if appellant
knew that a portion of the purchase-money was unpaid, and
she permitted the appellee to pay the same, she was estop-
ped from disaffirming her conveyance; but it omits to say
what would be the effect, if the appellee knew that the appel-
lant was a minor when the deed was made. The doctrine
of estoppel *in pais* rests upon a reasonable and just founda-
tion. For the prevention of fraud, the law will hold a party
to be concluded by his own act or admission. Surely this
can have no application where everything was equally known
to both parties, or where the party sought to be estopped was
ignorant of the facts out of which his rights spring, or where
the party seeking to conclude him was in no degree influenced
by the acts or admissions which are set up. *Fletcher* v.
*Holmes*, 25 Ind. 458; *The Greensburgh, etc., Co.* v. *Sidener*,
40 Ind. 424; *Foster* v. *Albert*, 42 Ind. 40.

To estop a minor from disaffirming a conveyance, on arriv-
ing at full age, some act must have been done, or there must
have been some omission, after reaching majority, which
would work injury to the person in possession under color of
title, rendering the disaffirmance a fraud upon him. *Miles*
v. *Lingerman*, 24 Ind. 385.

The omission of the appellant to give notice of her inten-
tion to disaffirm could not amount to a fraud upon appellee,
if she did not know of the indebtedness, and if appellee knew
of the infancy of appellant, and was not induced to pay such
purchase-money by the acts of the appellant.

Counsel for appellant assume another position in reference
to an estoppel, which we have not found necessary to con-
sider or decide, and that is, that if the purchase-money had
been paid to the appellant, she might have disaffirmed with-

out restoring the money by her received, and hence that she cannot be estopped by permitting the money to be paid to her husband.

Without expressing any opinion as to the proposition of law contended for, we feel impelled to say that there is great hardship and injustice in the statute which permits an infant *feme covert* to convey her lands by joining with her husband, and then allows her to retain the purchase-money, disaffirm the contract, and recover her lands. The legislature should either provide some mode by which an infant *feme covert* can make a valid conveyance of her lands, or compel her to restore the purchase-money as a condition precedent to the right to disaffirm her conveyance. It is our duty to administer the laws as passed by the legislative and approved by the executive department.

In our opinion, the thirteenth and fifteenth instructions do not properly express the law. The fourteenth instruction is correct.

It is also claimed that the court erred in refusing to instruct as requested by the appellant. The great length of this opinion forbids that we should set out such instructions, or enter into a critical analysis thereof; but, as the case goes back for another trial, it is proper that we should briefly state our opinion thereon.

The first and second are covered by the instructions given by the court. The third and fourth should have been given. The fifth, ninth and tenth are too narrow and restricted to properly express the law. The sixth should have been given. The seventh was properly refused, because it entirely omits to make any reference to the acts of appellant tending to show an affirmance of the contract. Under our ruling, the eighth will become unnecessary.

The court overruled the motion for a new trial for the reasons assigned, but entered an order that the appellant should have a new trial as of right on the condition that the costs were paid within one year. The order was nugatory.

Buskirk's Practice, 262, 263.  A new trial may be granted for cause in real actions as in any other actions.  A motion for a new trial for cause which is overruled does not preclude the moving party from afterwards taking a new trial under section 601 of the code, in a case coming within the purview thereof.

The judgment is reversed, with costs; and the cause is. remanded, for a new trial in accordance with this opinion.

DOWNEY, J., having been engaged as counsel, was absent and took no part in the decision.

PETTIT, J.—I concur in the conclusion of the court in this case, but to that part of the opinion which holds that a notice of disaffirmance was necessary before suit could be brought, I dissent, for two reasons :

1.  Because I think that question is not in the case. Notice was given, and the court holds that it was sufficient and given in time.   Why, then, hold that notice of disaffirmance was necessary to be given in such a case before suit could be brought?

2.  If it ever was the law in this State that notice of disaffirmance in such a case must be given before suit brought,. it could only have been on the foundation or reason that the defendant, thus having notice of an intended suit, might. quitclaim or release any interest in the property, and thus save himself from costs in the threatened suit.   It cannot now be the law, for on the subject of such actions as this our legislature has enacted: " If in such cases the defendant disclaim in his answer any interest or estate in the property, or suffer judgment to be taken against him without answer, the defendant shall recover costs."   2 G. & H. 284, sec. 613. Thus it seems that a defendant notified would be put in a worse condition than one not notified before suit brought. In the former case, he would have to make a release or quitclaim deed to avoid costs, while in the latter case he would only have to stay away from court to avoid costs.

See the notes to this section.    See, also, sec. 396 and notes, 2 G. & H. 225–6.

The reason of the law requiring notice, if it was ever law in such a case, having ceased and failed in this State, the law does no longer exist.    This is true of all laws, religious and moral, in their localities, national, international, state, municipal, and of society.