May Term,
1859.

JOHNSON
v.
ROCKWELL.

(1) Counsel for the appellant cited the following authorities:

Breach of condition is a forfeiture of the estate, by which it reverts to the grantor, his heirs or devisees, free from intermediate incumbrances by lease, descent, grant, or devise; and the grantor has a right to reënter, or to bring his action to recover the estate. *Gray* v. *Blanchard*, 8 Pick. 284.—*Jackson* v. *Topping*, 1 Wend. 388.—*Jackson* v. *Pike*, 9 Cow. 69.—*Hayden* v. *Stoughton*, 5 Pick. 528.—*Police Jury* v. *Reeves*, 18 Martin (La.), 221.—3 Denio. 334.—4 Kent's Comm. 125, 126.—*Cross* v. *Carson*, 8 Blackf. 138.—*Hefner* v. *Yount, id.* 455.—*Jackson* v. *Crysler*, 1 Johns. Cases, 125.—*Nicoll* v. *The New York and Erie Railroad Co.*, 2 Kern. 121.

---

## JOHNSON and Wife *v.* ROCKWELL and Others.

If a wife, by an antenuptial contract, secure to her separate use the property possessed by her at the time of her marriage, and have the same conveyed to a trustee, subject to her unlimited control; and, after marriage, she exchange a portion of that property for real estate, taking a conveyance to herself, separately—such real estate becomes her separate property, alike subject to her control, at least in equity, as was the property given in exchange for it.

A deed cannot be avoided on the ground of mental incapacity in the grantor, produced by intemperance, unless it appear that at the time he executed the deed he was incompetent to perform the act.

A deed by husband and wife, good in point of form, and properly acknowledged, and in its operative parts conveying a fee simple, is not vitiated by a concluding clause assuming to state the legal effect of the conveyance as to the wife—such clause being mere surplusage.

A wife may, with the consent of her husband, convey her separate real property.

In transactions between husband and wife touching the separate estate of the latter, she, *prima facie*, will be viewed in the light of a *feme sole;* and as such, she may dispose of it to him, or for his use, subject to proof of fraud or undue influence on his part; and such disposal of it will preclude her right to charge his estate, after his death, with what he so received. The conveyance, in such case, must be made through a third person.

The conveyance of real property by an infant is not void—it is only voidable; and where the contract for the conveyance is with an adult, such adult is bound, and cannot avoid the contract on account of the infancy of the other contracting party.

APPEAL from the *Carroll* Circuit Court.

PERKINS, J.—Petition by *Baalis Johnson* and *Sarah Ann,* his wife, for partition of lots 98, and 3 and 4, in *Lafayette.* The petition is against *Rockwell, Hamer,* and *Johnson.* The facts are somewhat numerous and complicated, and present several questions. The proceeding was instituted in *November,* 1848.

It appears that, by an antenuptial contract, said *Sarah Ann Johnson* secured to her separate use the property of which she was possessed before and at marriage. The property was conveyed to a trustee, subject to her unlimited control. A portion of that property she exchanged, after she was married, for lots 3 and 4, above mentioned. The conveyance of them was to her separately, and not jointly with her husband. They became, therefore, her separate property, alike subject, at least in equity, to her control, as was that which was given in exchange for them. Glancy's Husband and Wife, 272, 612.

It appears that lot 98, above mentioned, was the property of *Mary E. Hamer,* a daughter of said *Sarah Ann Johnson* by a former husband, and who, while an infant, married *Jonathan R. Rockwell.* Afterwards, and while said *Mary E.* was still an infant, she and her husband jointly conveyed

*May Term,*
1859.

JOHNSON
v.
ROCKWELL.

*Wednesday,
May 25.*

lot 98 to *Francis V.* and *Baalis D. Johnson,* infant children of appellants, in consideration of the conveyance by said appellants, *Baalis Johnson,* and *Sarah Ann,* his wife, of said lots 3 and 4 to said *Jonathan R. Rockwell,* and the sum of 500 dollars paid to said *Baalis Johnson* by said *Mary E. Hamer* (then *Rockwell*).

On the 26th of *December,* 1846, *Mary E. Hamer* (then *Rockwell*) died childless, being the day on which she arrived at majority. She left, as her only heirs, *Sarah Ann Johnson,* the female appellant, *Thomas F. Hamer,* a brother, and *Ruth Ann Clark,* a niece.

Said *Thomas F. Hamer* released his interest to said *Sarah Ann Johnson.* He denied the validity of the deed, on the ground of mental incapacity, produced by intemperance; but the Court ruled against him, and rightly. *Lewis* v. *Baird,* 3 McLean, 56.—*Achey* v. *Stephens,* 8 Ind. R. 411. It was not made to appear that, at the time he executed the deed, he was incompetent to perform the act. It should have thus appeared.

*Baalis D. Johnson* died leaving no issue, but leaving a sister and appellants, his heirs.

*Ruth Ann Clark* died leaving no issue, but leaving as her sole heir, *Thomas F. Hamer.*

It thus appears that the parties to this suit have become the only ones interested in the property involved.

The Court below set aside the deeds from *Johnson* and wife to *Rockwell,* and from *Rockwell* and wife to *Johnson.*

We will examine the rulings upon these points.

*First.* Of the deed of *Johnson* and wife to *Rockwell.* It is in the following form: "This indenture, made this third day of *April, A. D.* 1846, between *Baalis Johnson* and *Sarah Ann Johnson,* his wife, of, &c., of the first part, and *Jonathan R. Rockwell,* of, &c., of the second part, witnesseth: That the parties of the first part (*Johnson* and his wife), do hereby, in consideration of the sum of nine hundred dollars, grant, bargain, sell, and convey unto the party of the second part, his heirs and assigns forever, all those certain tracts or parcels of lands, &c., viz.: lots three and four in *William Barbee's* addition to the town of *Lafayette,* to

have and to hold the premises and appurtenances above described to the said party of the second part (*Rockwell*), his heirs and assigns forever. And the said *Baalis Johnson*, and *Sarah Ann*, his wife, for themselves, &c., covenant and agree with the said *Jonathan R. Rockwell*, his heirs, executors, administrators, and assigns, that they (the grantors) are lawfully seized in fee of the premises granted; that they are the true and lawful owners of the same, and that they, for themselves, their heirs, &c., will warrant and forever defend the premises above described, with their appurtenances, unto the party of the second part (*Rockwell*), his heirs and assigns forever, against all claims of any person or persons whatever; and the said *Sarah Ann*, wife of the said *Baalis*, hereby relinquishes all her right, title, and claim to dower, in said premises."

The deed is executed and acknowledged by *Baalis* and *Sarah Ann Johnson*. The acknowledgment is in the usual form, stating the separate examination of the wife, the explanation of the deed, the acknowledgment of its free execution for the uses and purposes expressed, and that she thereby relinquished all right, &c., of dower.

It is contended that this deed is void, and conveyed nothing.

The deed is good in point of form—it is sufficient upon its face. In its operative parts it conveys the fee simple. The concluding clause, assuming to state the legal effect of the conveyance, as to one of the grantors, is immaterial, mere surplusage, and does not vitiate the deed. The use of the word dower is a mere misnomer, both in the deed and acknowledgment, as is evident from the whole instrument, and could not mislead any one, nor limit the legal operation of the deed. *Ostrander* v. *Spickard*, 8 Blackf. 227.

It was competent for the wife, with the consent of her husband, to make a conveyance of her separate real property. *Reese* v. *Cochran*, 10 Ind. R. 195.—R. S. 1843, p. 417.—Reeve's Dom. Rel., p. 112. "In transactions between husband and wife, relative to the separate estate of the latter, she, *prima facie*, will be viewed in the light

of a *feme sole*, and, as such, be competent to dispose of it to him, or for his use, subject to proof of fraud or undue influence on his part." 2 Bright on Husband and Wife, p. 257. The conveyance must be made through third persons. *Resor* v. *Resor*, 9 Ind. R. 347. Since the wife may appoint and ·dispose of her separate property as a *feme sole*, so she may give·it to, or permit her husband to receive it, which will preclude her right, after his death, to charge his estate with what he so received. Bright, *supra*, p. 259. See Reeve's Dom. Rel., p. 98, *et seq.* ; 1 Dan. Ch. Pr. (Perk. ed.) 121. In this case, there is no proof of fraud. The consideration paid was adequate, and went to the uses designated by Mrs. *Johnson*.

*Secondly.* Of the deed from *Rockwell* and wife to the infant children of the said *Baalis* and *Sarah Ann Johnson*. The questions upon this, are varied from those upon the deed of *Johnson* and wife, in this particular only, viz., that Mrs. *Rockwell* was an infant at the time the deed was made.

Upon this point, counsel for *Rockwell* argue thus :

" The deed from *Rockwell* and wife to the children of the complainants is not deficient in form or substance. The code of 1843, which governs the case, (p. 417, § 17,) provides that the joint deed of the husband and wife, upon complying with the provisions of § 40, of the same chapter, should be sufficient to convey and pass the real estate of the wife, but not to bind her to any contract or estoppel therein. In the execution of the deed, the provisions of § 40 were strictly complied with. The statute refers to all married women, making no discrimination between adults and minors, but, alike, places their real estate under the guardianship of the husband. That such was the intention of the legislature, becomes the more manifest from the fact that § 41 of the same act provides that a married woman, under the age of twenty-one years, cannot release dower in her husband's lands, without the sanction of her guardian or father, and omits to apply the same rule where the lands of the wife are conveyed. The stat-

ute is clear, and not open to a construction different from <span>May Term,</span>
that above given to it. Very plainly, *ita lex scripta est.*"   **1859.**

This argument is plausible—the position assumed may   JOHNSON
be correct; but there is another ground on which we prefer   ROCKWELL.
to rest the case.

The conveyance of real property by an infant, is not
void; it is only voidable. *Pitcher* v. *Laycock*, 7 Ind. R.
398. And where the contract for the conveyance is with
an adult, such adult person is bound, and cannot avoid
the contract on account of the infancy of the other con-
tracting party. Reeve's Dom. Rel. 343. Where the con-
tract is one absolutely void, neither party is bound.

Here the contract was only voidable, and is now, in
reality, sought to be avoided by the adult party; for the
conveyance of the *Rockwells*, now sought to be avoided,
was executed in fulfillment of a contract with said *Sarah
Ann Johnson.*

Again: Mrs. *Johnson*, the mother of the infant grantor,
approved of the conveyance when made by the infant, and
would be estopped now, as heir, to seek to avoid it on ac-
count of the infancy.

*Per Curiam.*—The judgment is reversed with costs.
Cause remanded for further proceedings in accordance
with this opinion.

*R. C. Gregory, R. Jones, J. M. La Rue,* and *W. O. Dem-
ing,* for the appellants (1).

*J. Pettit, S. A. Huff,* and *Z. Baird,* for the appellees (2).

---

(1) The following is an abridgment of the argument of counsel for the ap-
pellants:

Both parties complain of the decree. On the part of the plaintiffs, we pro-
pose presenting several views of the questions presented by the record, as
between them and *Rockwell*, and discussing separately the questions between
them and *Hamer*. The plaintiffs complain of so much of the decree as directs
the money specified by it to be paid to *Rockwell*, as also the making these sev-
eral sums liens. So much of the decree as sets aside the deeds from the plain-
tiffs for lots 3 or 4 to *Rockwell*, and from *Rockwell* to the minor children of the
plaintiffs, we think correct, for the following reasons: Mrs. *Johnson* had a
separate property, in exchange for which she received the conveyance for lots
3 and 4 from *Barbee*, and these lots, in equity, are regarded as separate prop-
erty, and the power of Mrs. *Johnson*, or her husband, over the same, is identical
with the power either had over the separate property, in exchange for which

they were obtained. Clancy's Husband and Wife, 272, 612, and cases cited. The husband did not become tenant by the curtesy of these lots. He had no interest therein, and could convey none. Nothing could then pass by the deed to *Rockwell*, unless it was Mrs. *Johnson's* title. The deed is in the usual form of a conveyance of the husband's realty with full covenants. The *testatum* clause is as follows : "In witness whereof, the said *Baalis Johnson* and *Sarah A. Johnson*, who hereby releases her dower in said premises, have," &c. So the acknowledgment purports to be by the wife an acknowledgment of her release of dower, and nothing more. The deed, upon its face, does not purport to be a conveyance of the wife's general or separate property.

The intent of parties might have been different from that expressed by this deed, but the intent of a married woman cannot, even in equity, be regarded as carried into effect; nor can the operation of a conveyance of her separate property be extended or limited except by the terms of her deed. It cannot operate by way of estoppel, as the covenants and warranties do not bind her. *Aldridge* v. *Burlison*, 3 Blackf. 201.

In *Mayo* v. *Keaster*, 2 McCord, 137, a deed similar to this was held to convey nothing, as it purported to be, and was acknowledged as, a release of dower in the husband's lands, and could not be held to convey the absolute title of the wife. A like decision has been made in *Connecticut*. If this deed is totally inoperative, as we think it clearly is, it should be set aside as a cloud on the title. *Hays* v. *Hays*, 2 Ind. R. 28. The deed from *Rockwell* and wife to the children of the plaintiffs, is exactly of the same character, and would have been inoperative to convey the title of Mrs. *Rockwell* to lot 98, for the same reason. But it was absolutely void as to her, from the fact that she was an infant at the time of its execution (having died upon the day she arrived at full age), and could not have any operation as to *Rockwell*, for no issue was born of the marriage, and he, of course, never had any title whatever.

The deed for lots 3 and 4 should be set aside for another reason. It was made under a mistake, which would require its cancellation, even if Mrs. *Johnson* had been discovert. She executed it for the purpose of settling a liability against her husband, and to make a provision for her infant children by having vested in them the title to lot 98. This purpose was not, and could not be, accomplished by giving them *Rockwell's* covenants or warranties instead of the absolute title. She executed her conveyance under the full assurance that by it she accomplished this double purpose; but the consideration in great part moving her to this act failed, owing to the mistake as to the effect of the conveyance to her children. It was a mistake as to a most material and substantial part of the transaction, requiring its entire rescission. 1 Story's Eq. Juris., § 141.

If either of the foregoing views of the case is correct, the decree is right so far as it declares these deeds canceled, but is wrong in the manner of taking the account and declaring the existence of liens. The account should have been taken by charging *Rockwell* with the rents of lots 3 and 4 from the date of the conveyances to the final decree, deducting the 80 dollars paid by him, and all outlays for repairs, taxes, &c., together with the rents of lot 98 from the same time, up to the death of his wife. This would have left a balance of several hundred dollars in favor of Mrs. *Johnson*, which he should have been decreed to pay her for her separate use. The account between *Rockwell* and Mrs. *Johnson* should have been taken, without reference to any supposed or

real liability on the part of her husband to *Rockwell*. If such liability exists, and could be adjudicated in this proceeding (both of which propositions we doubt, for reasons stated below), it should have been adjudicated between them alone, and *Baalis Johnson* directed to pay any sum found due from him.

We are at a loss to conceive by what process of reasoning the Court below could have arrived at the conclusion that it could appropriate the rents of lots 3 and 4 (the separate property of a married woman) to the payment of a debt of her husband, or decree such debt of the husband, or any part of it, a lien on the general or separate real property of the wife. We suppose there could be no decree as between *Baalis Johnson* and *Rockwell;* that the state of the pleadings would forbid it, if the right existed; that whatever right *Rockwell* might have, as the administrator of his wife, to her personalty not reduced to possession during her life, he can have no right to it except he has assumed that character; and until he becomes such administrator, he has no more right to a decree for the payment of the money of his wife in the hands of any one, than a mere stranger.

It is proper that we should present still another view of the branch of the case we have been discussing, asking for it the consideration of the Court, if the deed to *Rockwell* can be held to have conveyed Mrs. *Johnson's* title to lots 3 and 4. The evidence fully establishes that Mrs. *Rockwell* had contracted, long before her marriage, with Mrs. *Johnson* (her mother) for a conveyance of these lots 3 and 4, for the same consideration that the conveyance was afterwards made, and had taken possession of them in pursuance of the contract (if you can call an agreement between an infant and a married woman a contract); and had both been competent to contract at the time of her marriage, Mrs. *Rockwell* was the equitable owner of these lots. Being such owner, after her marriage (even had she been of full age), she could not have converted her equitable title into a legal title in her husband, so as to have bound either herself or her heirs. The conveyance having been made at a time that, by reason of her coverture (as well as her infancy), she could give no binding or legal assent, the conveyance vested in *Rockwell* (her husband) the bare legal title, which he held in trust, and these lots must be regarded for all purposes, in equity, as the general property of the wife, by whom, or by whose heirs, the trust can be enforced.

*Moore* v. *Moore*, 12 B. Mon. 651, is directly in point. There were several matters in controversy in that case, but so far as it bears upon this case, the facts were as follows: The guardian of *Martha Moore*, during her minority, invested some of her money in the purchase of a tract of land, adding some of his own funds to complete the payment, and took a conveyance to himself. After her arrival at full age, she married, and her guardian conveyed the tract of land to herself and husband jointly, the husband promising to pay the sum he had advanced. She died without issue, and her heirs at law claimed the land. In discussing this branch of the case, the Court says, p. 663: "It remains that we consider whether the complainants were entitled to a decree for a portion of the land conveyed by *George Moore* to *Noah S. Moore* and his wife, the said *Martha*, jointly, after their intermarriage. This is the tract of land which was purchased by *George Moore*, whilst he was the guardian of the said *Martha*, at her instance, and for her. It was paid for chiefly by the means of *Martha*, but partly with the means of *George Moore*. He says that he conveyed the land to *Noah S. Moore* and the said *Martha* jointly, because he be-

lieved the conveyance to her could be made in no other way. *Noah S. Moore* charges that the reason assigned by *George Moore* for making the conveyance to himself and wife jointly, is not the true one, but that he made it in that way at 'the earnestly expressed wishes and desires of the said *Martha*,' and because he had undertaken to pay that portion of the purchase-money which had been advanced by the said *George Moore*, out of his own means.

"There is no proof in regard to *Martha's* wishes and desires to have this land jointly conveyed to herself and husband; and if there were, it would not avail anything. True, we might and do feel a desire that her wishes, if she expressed any in reference to her husband, could be complied with; but unless the law will give him this land, any feeling which we might have, cannot be gratified. *Noah S. Moore*, being a joint grantee with his wife, and being, as he says, seized of the entirety during their joint lives, claims the whole of this land by survivorship. Had they been jointly entitled, he would, as survivor, have a right to the land—the statute of this state abolishing the *jus accrescendi* between joint tenants, not applying to estates granted jointly to husband and wife. But we are of opinion they were not jointly entitled to the land. Before *George Moore* made the conveyance to *Noah S.* and wife, she was the equitable owner of the land—as much the equitable owner as she would have been the legal owner, had the conveyance, before that time, been made to her alone. It is clear that, in that state of the case, she could have made no contract or co-tenancy with her husband or with *George Moore*, by which to divest herself of her title; and it is equally clear to our minds, that no wish or desire which she might have expressed to *George Moore* or her husband, or to both, and thereby procuring a joint conveyance to herself and husband, would enable her to invest her husband with a joint interest in the land. The general principle of law is, that a wife cannot so contract as to bind herself; her contracts are void. She is presumed, in most cases, and the case under consideration comes not within any exception to the rule, to act under the power of the husband, and by his coercion. And if she cannot make a contract which would bind her, it is evident she cannot be bound by an act done merely by request— *a fortiori* she cannot be bound where it was done, as in this case, as far as the proof shows, without even a request. If she was not bound, neither are her heirs. It is laid down in Story's Equity, p. 617, 'that a married woman is disabled from making any contract respecting her real property, either to bind herself or to bind her heirs; and that this disability can be only overcome by adopting the precise means allowed by law to dispose of her real estate; as in *England* by a fine, and in *America* by a solemn conveyance.' So far, therefore, as *Noah S. Moore* was the recipient of the mere legal title to this land, he held the same in trust for his wife, and now holds the same in trust for her heirs."

And it was decreed that the husband should convey this tract of land to the heirs of his wife, and pay them the rents from the death of his wife, and that the heirs repay the guardian the sum he advanced to complete the purchase.

Adopting this view of the case, it should have been decreed that *Rockwell* convey the lots 3 and 4 to the heirs of his wife; and, after taking the account in the same manner as before indicated for taking it between him and Mrs. *Johnson*, that he should pay the balance to the heirs of his wife; and that he be released from his covenants in the deed to the plaintiffs' children; but that the agreed price of that lot, with interest, should, in favor of those children, be de-

clared a lien on lot 98, and it sold to pay the lien, unless it was paid by the heirs of Mrs. *Rockwell*.

We how propose examining the other branch of the case in which Mrs *Johnson* and the defendant *Hamer* are alone interested. He, by his answer, admits he executed the quitclaim to Mrs. *Johnson*, as charged, on the 25th day of *January*, 1847, but charges that this conveyance was obtained from him for a grossly inadequate consideration, by fraudulent representations, when he was drunk, &c. Is the alleged gross inadequacy of price made out? It is proved that the whole property described in his deed is of large value, but there is no proof showing the value of his interest in it. There is no proof showing he had the smallest interest, at the time, in any of the property described in his deed, except as heir at law of Mrs. *Rockwell*, and as such heir, he was entitled· to one-fourth of her realty. The record does not show that she owned any realty at her death except the parcel of school-land purchased for 200 dollars, and whatever interest she had in the town lots described. Whether *Hamer* had retained his interest, as one of her heirs, in this parcel of land, up to the date of his deed, is not certainly shown. If he had not parted with it, how could *Rockwell* and *Baalis Johnson*, as well as *Barroll* (*Rockwell's* attorney), have doubted whether there was any interest in *Hamer?* If he was the owner of one-fourth of this, and conveyed it, that interest could not have been worth more than from 50 to 75 dollars. What interest his deed conveyed in lots 3 and 4 and 98, described in the bill, we cannot pretend to say. If the conveyances of these lots are canceled, his deed conveyed only the one-fourth of lot 98, worth from 75 to 100 dollars. But the title to this was by no means unclouded. In the state of the title and possession, his right in this lot could only be asserted by a litigation, which would probably cost as much as his interest was worth. If the deeds are not canceled, still he had no interest whatever in lots 3 and 4, unless *Rockwell* is held to be a trustee as to them for the heirs of his wife, in which event the interest conveyed by him in these lots would turn out to be worth some 250 dollars, and the interest conveyed by him in lot 98, of little or no value. No prudent man, at the time of his conveyance, would have purchased *Hamer's* interest in these lots, and paid for it 50 dollars, being fully advised of all the facts—knowing such interest could not possibly be worth more than 300 dollars—would probably prove worth less than 100 dollars—and was utterly worthless, except as the basis of a tedious, uncertain, and expensive litigation. The dealing, as shown by the answer itself, and especially as shown by the deposition of *Rockwell*, was for an uncertain and contested interest that might prove of greater or less value than the price fixed. It was a chancing bargain, and cannot be affected by the interest conveyed proving of greater or less value than was attached to it at the date of the conveyance. *Merriwether's adm'r.* v. *Heron*, 8 B. Mon. 162.—*Jasper* v. *Hamilton*, 3 Dana, 280. For these uncertain interests, *Hamer* received 100 dollars, in money and property, as he alleges. Is this "such inadequacy of price as shocks the senses, and, at first blush, shows a fraud has been perpetrated?" Story's Eq. Juris., § 244, and on.—*Roe ex dem. Weirick* v. *Ross*, 2 Ind. R. 99. Indeed, was not the price paid more than any prudent man, having no connection with the title, would have paid for such a contested claim? The allegations in *Hamer's* answer, of fraudulent representations and concealments, are utterly unsupported by proof. There could have been no concealment, as all the conveyances were of record, and *Hamer's* relationship to Mrs. *Rockwell*,

May Term,
1859.

PATTERSON
v.
THE STATE.

her age at her death, and his rights as one of her heirs, must have been as well known to him as to any other person.

*Hamer* alleges this conveyance was procured while he was drunk. The only evidence tending to prove the allegation is, that he was in the habit of becoming intoxicated; but there is not the slightest proof that he was intoxicated at or about the time he made this deed, or at any time while the negotiation lasted, which must have been several days, from *Rockwell's* history of it. What facts must be shown to avoid a deed on account of the drunkenness of the grantor, is determined in *Harbison* v. *Lemon*, 3 Blackf. 51, and *Jenners* v. *Howard*, 6 *id*. 240. Even had *Hamer* proved the allegations of his answer, (all of which are denied by the plaintiffs' replication,) he could have no relief; because he did not offer to return what he received, but something else which he chose to consider an equivalent. Or had the consideration for his deed been wholly a money one, and his tender proper, still he must have brought the money tendered into Court, to have entitled him to a rescission of his contract.

(2) An elaborate brief was filed by counsel for the appellees; but only a mutilated copy came to the Reporter's hands, from which the argument could not be gathered.