## 11898

### HAMMASSAPOULO *ET AL.* v. HAMMASSAPOULO *ET AL.*

#### (131 S. E., 319)

1. APPEAL AND ERROR—CONCURRENT FINDINGS OF MASTER AND CIRCUIT JUDGE PRACTICALLY FIX FACTS, UNLESS ERROR OR ABUSE OF DISCRETION IS SHOWN.—Concurrent findings of fact by Master and Circuit Judge practically fix facts of case, unless an error or abuse of discretion on part of Circuit Judge is shown by clear and decided preponderance of testimony.

2. INFANTS—CONTRACTS OF MINOR ARE MERELY VOIDABLE, BUT CANNOT BE AVOIDED BY ADULT WITH WHOM MINOR DEALS.—Contracts made by minor are merely voidable, but contract cannot be avoided by adult with whom minor deals.

3. SPECIFIC PERFORMANCE—VENDOR HAS RIGHT TO HAVE CONTRACT FOR SALE OF LAND SPECIFICALLY PERFORMED.—Vendor has right by proceeding on equity side of Court to have contract for sale of land specifically performed.

4. SPECIFIC PERFORMANCE—CONTRACT MUST BE ESTABLISHED BY COMPETENT AND SATISFACTORY PROOF FOR SPECIFIC PERFORMANCE.—In suit for specific performance, contract must be established by competent and satisfactory proof, such as is clear and definite and reasonably certain, having regard to subject matter of contract.

5. SPECIFIC PERFORMANCE—ACTION HELD IN EFFECT ACTION FOR SPECIFIC PERFORMANCE.—Action brought to confirm sale at auction of land in which infants had interest, wherein it appeared from purchaser's answer that he contemplated rescission of contract, *held* for all practical intents and purposes an action for specific performance.

6. INFANTS—WHAT COURT ON APPLICATION WOULD HAVE ORDERED TO BE DONE IT WILL SANCTION WHEN DONE BY PARTIES VOLUNTARILY.—Where Court on application would have ordered sale of real estate in which infants had interest, it will sanction sale made by parties voluntarily.

7. CONTRACTS—SALE OF LAND AT PUBLIC OUTCRY, SUBJECT TO APPROVAL OF COURT AS TO MINORS' INTEREST, HELD ENFORCEABLE CONTRACT.—Where, by agreement with administrator of estate and representative of heirs, land was sold at public outcry, subject to approval of Court as to minors' interest, contract was enforceable contract, not lacking in mutuality.

8. VENDOR AND PURCHASER—REASONABLE TIME ACCORDING TO CIRCUMSTANCES OF THE CASE MAY BE FIXED WITHIN WHICH TITLE MUST BE MADE, WHERE TIME NOT FIXED IN CONTRACT.—Where no

time is fixed in contract for sale of land, or time is not essential, party cannot trifle with interests of opposite party by unnecessary delay, and opposite party may fix reasonable time according to circumstances of case within which time title must be made.

9. SPECIFIC PERFORMANCE—PURCHASER AWARE OF OBJECTION TO TITLE HELD TO HAVE WAIVED RIGHT TO OBJECT TO DELAY IN MAKING TITLE.—Where purchaser is aware of objection to title, and proceeds with purchase, after time fixed for completion of contract has expired, he waives his right to object to delay, and cannot resist specific performance.

10. SPECIFIC PERFORMANCE—TIME IS NOT GENERALLY CONSIDERED AS ESSENCE OF CONTRACT IN SPECIFIC PERFORMANCE.—Time is not generally considered as essence of contract in specific performance.

11. SPECIFIC PERFORMANCE—PURCHASER HELD NOT RELIEVED ON GROUND OF DELAY IN GETTING TITLE, WHERE HE KNEW HEIRS WERE RESIDENTS OF GREECE.—Discretion of Court *held* wisely exercised in ordering specific performance of contract despite delay, where purchaser bought land with knowledge of difficulty in obtaining title because of heirs being resident in Greece.

12. SPECIFIC PERFORMANCE—DEPRECIATION WILL NOT RELIEVE PURCHASER FROM CONTRACT.—Mere fact that property had depreciated in value will not relieve purchaser from contract that he himself made.

13. SPECIFIC PERFORMANCE—PURCHASER WITH KNOWLEDGE OF FACTS CAUSING DELAY IN MAKING TITLE HELD NOT ENTITLED TO RELIEF FROM SPECIFIC PERFORMANCE BECAUSE PRICE DECLINED.—Purchaser of land at public sale, subject to approval of Court as to minors' interest, who had knowledge that heirs were resident in Greece, *held* not entitled to relief from specific performance because price declined during delay in giving title, in view of his own evidence.

Before JOHNSON, J., Charleston, November, 1923. Affirmed.

Action by Despina Hammassapoulo and another against Mersina and Haralmbos Hammassapoulo, minors under the age of fourteen years, and Benjamin Olasov. From a decree of the Circuit Court, confirming the report of the Master, defendant, Olasov, appeals.

*Messrs. Shimmel & Rittenberg,* for appellant, cite: *Contract lacking mutuality unenforceable:* 10 Wall, 399; 19 L. Ed., 956; 262 U. S., 489, 262 U. S., 494; 67 L. Ed., 1089;

296 F., 694; 87 Fla., 193; 99 So., 879; 25 R. C. L., 234; 5 Pomeroy's Jurisprudence, 2d Ed., Sec. 2192. *Time of essence of contract:* 104 S. E., 308; 9 S. C. Eq., 236; 3 S. C. Eq., 305. *Loss to one of two innocent parties:* 104 S. E., 308.

*Messrs. Logan & Grace* and *John I. Cosgrove,* for respondents, cite: *Appeal from concurrent finding of trial Court and Referee:* 100 S. C., 234, 100 S. C., 144, 100 S. C., 59. *Abuse of discretion:* 100 S. C., 231. *Court will sanction what it would have ordered:* 108 S. C., 108, 35 S. C., 521; 15 S. E., 270; 4 DeS. Eq., 465; 3 Strob. Eq., 86. *Granting specific performance matter of discretion:* 127 S. C., 233, 120 S. C., 327, 5 S. C., 450. *Plaintiff entitled to specific performance:* 5 S. C., 225; 2 Hill Eq., 121. *Time not of essence of contract:* 5 Rich. Eq., 370; 5 S. C., 450. *Purchaser aware of objections to title:* 120 S. C., 323; 5 Rich. Eq., 370.

January 16, 1926.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE.

This is an appeal from a decree of his Honor, Judge Johnson, confirming a report of the Master, Hon. F. K. Myers. The facts as found by the Master and concurred in by the Circuit Judge are as follows:

On or about the 1st day of June, 1920, Nick Hammassapoulo, a native of the Town of Dikeli, in the Kingdom or Republic of Greece, died in the City of Charleston, unmarried, and without leaving a will, and possessed of a lot of land in the City of Charleston. The intestate left his mother, a sister, a niece, and a nephew as his heirs-at-law and next of kin; each being entitled to an undivided one-fourth part of the tract of land referred to in the complaint. The niece and nephew were minors under the age of 14 years, and are made parties defendant along with the appellant, Benjamin Olasov. By an agreement of the adminis-

trator of the estate and representative of the heirs, Athanas Tsiropoulo, the land left by the decedent was offered for sale at public outcry on the 25th of October, 1921, and was knocked down and sold to the defendant, Benjamin Olasov, for the sum of $2,975. The sale (attempted) and accepted bid constituted an enforceable contract; the same being made subject to the approval of the Court so far as the interest of the minors was concerned. The defendant, Olasov, sets up in his answer that at the time of his alleged purchase he had a prospect in view for the sale of the said land which he was unable to carry out by reason of the delay in the tender of the title, and that, since the sale and his bid therefor, the premises have greatly depreciated in value because of the market conditions and demand for real estate in the City of Charleston; that, subsequent to the said sale, negotiations were carried on between plaintiffs' counsel and counsel for the said Olasov for the bringing of the necessary proceedings for confirmation of the said sale; that on the 14th day of January, 1922, a reference was held for the purpose of taking the testimony of a witness about to depart the country, under stipulations between the said counsel, that the summons and complaint were prepared, together with the verification thereof, and that the said verification was sent by plaintiffs' attorneys to the City of Athens, Greece, and was there executed on the 22d day of August, 1922; that the summons and complaint were served on the defendant, Benjamin Olasov, March 15, 1923, and the answer of the said Benjamin Olasov was sworn to on the 21st day of March, 1923, in which it appeared for the first time that the said defendant contemplated a rescission of his contract on the ground of depreciation of the value of the real estate due to laches in the perfection of the partition proceedings; that during all of this period the said Benjamin Olasov was in charge of the said premises, collecting the rent therefrom and applying the rents to the payment of the taxes and insurance and necessary repairs, and that the

said Olasov now has in his hands net rents collected from the said premises amounting to $182.96. It was further found in this case that, with knowledge of the fact that proceedings were necessary in order to obtain title, and that such proceedings were subject to delay by reason of the disturbed conditions in the Kingdom or Republic of Greece during the period of preparation, the said defendant, Olasov, confirmed the said sale, in so far as the inability of the parties in interest to tender an immediate title was concerned, by employing counsel to represent him in the perfection of the said proceedings. It was further found that the price at which the said premises were purchased in October, 1921, to wit, the sum of $2,975, would only be a fair price for the premises at this time, taking into consideration the returns and the possible returns from the rent of the said premises and the further testimony of the defendant that the application of the proceeds of rents have prevented material depreciation in the condition of the said premises. The remainder of the said report is concerned with matters of detail which need not be set out here.

At the outset we are confronted with the well known rule that, where a Master makes a finding of facts which is afterwards confirmed by the Circuit Judge, the burden is on the appellant to show that the preponderance of the evidence is against the concurrent findings of the Referee or Master and the trial Judge. There are so many cases laying down this principle that it is useless to quote cases in support of the rule which has been adopted by this Court that the concurrent findings of fact by the Master and Circuit Judge practically fix the facts of the case, unless an error or abuse of discretion on the part of the Circuit Judge is shown by a clear and decided preponderance of the testimony.

The following questions present themselves in discussing this case:

1. Was there such a contract as will be enforced in an action of this kind? Was the contract lacking in mutuality? Contracts made by a minor are merely voidable. *Holmes v. Rice,* 45 Mich., 142; 7 N. W., 772. But the contract cannot be avoided by an adult with whom the minor deals. *Johnson v. Rockwell,* 12 Ind., 76. *Patterson v. Lippincott,* 47 N. J. Law, 457; 1 A., 506; 54 Am. Rep., 178.

"It is well settled that the vendor has a right by a proceeding on the equity side of the Court to have a contract for the sale of land specifically performed." 25 Ruling Case Law, 272. *Blackwell v. Ryan,* 21 S. C., 112. *Thomson v. Scott,* 1 McCord, Eq., 32. *Gregorie v. Bulow,* Rich. Eq. Cas., 245. *Walker v. Kee,* 16 S. C., 76.

"In suits for specific performance, the contract must be established by competent and satisfactory proof, such as is clear, definite, and certain." *Blackwell v. Ryan,* 21 S. C., 112. *Thomson v. Scott,* 1 McCord, Eq., 32.

"The degree of certainty required is a reasonable certainty, having regard to the subject matter of the contract." 25 Ruling Case Law, 220; 26 Am. Dec., 662, note.

"In a contract with the father for the benefit of his infant children, there is not such a want of mutuality as will exonerate the other party from performance." *Sarter v. Gordon,* 2 Hill Eq., 121.

While this was not originally an action for specific performance, yet, under the pleadings and evidence in this case, the case at present is, to all practical intents and purposes, an action for specific performance. Had the minors at the outset come into Court for the purpose of making a sale of the real estate, there is not a shadow of doubt but that the Court would have ordered a sale and a division of the proceeds.

"What the Court, on application, would have ordered to be done, it will sanction, when done by the parties voluntarily." *Ryan v. Bull,* 3 Strob. Eq., 86. *Shumate v. Harbin,* 35 S. C., 521; 15 S. E., 270.

In *Belton v. Briggs,* 4 Desaus., 465, a joint estate was held
in land by several brothers, one of whom was a minor, and
the other parties interestel, with the knowledge and approba-
tion of the infant, joined in the sale of the land, covenant-
ing that, when the infant became of age, he would confirm
the sale.   It was held that, the contract being for the infant's
benefit, his action and acquiescence in the transaction for
several years after he became of age, and in joining in a
conveyance of the land paid for with the proceeds of the
sale of the first contract and substituted for it, had confirmed
the sale or substitution, and that he was bound to make title
to the purchaser.   The grandmother of the infants acted
in their behalf, and the Court held that, if what was done
for the said infants is for their benefit and the benefit of
their said estate, it will be approved.

The case of *Sarter v. Gordon,* 2 Hill Eq., 121, was a
case for the specific performance for the sale of slaves, and
in which the Court of Appeals held that the action for
specific performance would lie in case of slaves as well as
land.   The father of some minor children entered into a
written contract on behalf of the minors to purchase a num-
ber of slaves.   After the death of the owner of the slaves,
the suit was brought for the specific performance on the
theory that the father, in making the contract, was a trustee
on behalf of the children.   The Court held, among other
things, when the objection was made that there was no
proof of agency of the father and no mutuality of con-
tract:

"It is true that Reuben Simms with whom Mr. Stevens
contracted to sell and deliver the slaves in question did not
contract on his own behalf, but on behalf of the children,
or, in other words, was constituted a trustee in their behalf.
Now it is the doctrine of law, as well as of common sense,
that, if a stranger undertakes to contract for minors, his act,
though it may not bind them, should bind him.   *   *   *
Besides, it is not true that all contracts should be so abso-

lutely mutual that mutual remedies should flow from them; one exception is that, if the adult male make a promise of marriage with a minor, and fail to perform it, he would be liable for damages, though she would not be liable."

So spoke the Chancellor on the circuit.

In the Court of Appeals, Chancellor Harper said this in reference to the question of mutuality in the contract:

"Under the eighth ground, the want of mutuality in the contract is relied on; that is to say, that defendant's testator could not have enforced performance against the plaintiffs who were not parties to the contracts.    There can be no doubt but that Reuben Simms and the testator were bound at law.  *  *  *  Both parties must be bound, or the Court will not enforce the performance.  But he (Lord Redesdale) makes the exception expressly in the case of infants.  'It is the peculiar privilege of infants for their protection that though they are not bound, yet those who enter into contracts with them shall be bound, if it be prejudicial to the infants to rescind the contract.' Most of the plaintiffs were infants at the time of the contract and under the exception entitled to performance."

So it is clear that the lower Court was right in holding that there was an enforceable contract, and that there was no such lack of mutuality as to make the contract nugatory.

2. The next question that arises is: Was there such delay as will release the appellant, Olasov, from the performance of his part of the contract?

"Where no time is fixed in the contract, or time is not essential, it will not, however, be permitted" that a party can "trifle with the interests of the opposite party by unnecessary delay; it is in the power of the latter to fix some reasonable time—not capriciously or with intent to surprise, but a reasonable time according to the circumstances of the case—within which he will expect the title to be made at

the peril of rescinding the agreement." *Thompson v. Dulles,* 5 Rich. Eq., 370.

"Where 'a purchaser is aware of the objections to the title, and proceeds with the purchase, although the time fixed for the completion of the contract may have elapsed, and a much longer period may be requisite in order to make a good title, he will be held to have waived his right to object to the delay, and not be able to resist specific performance.'" Id.

"The contract was not performed by B within the two years fixed by its terms. *Held,* that B was not deprived thereby of his right of action, time not being of the essence of the contract." *Columbia Water Power Company v. City of Columbia,* 5 S. C., 225.

"In specific performance, time is not generally considered as of the essence of the contract." *Lesesne v. Witte,* 5 S. C., 450.

"Slight delay in filing bill for specific performance of contract for sale of land excused by circumstances." *Sams v. Fripp,* 10 Rich. Eq., 447. *Lyles v. Kirkpatrick,* 9 S. C., 265.

All the cases hold that the Court is allowed large latitude in the exercise of a sound and reasonable discretion in relation to actions for the specific performance of contracts, and it does not appear to the Court that this discretion was not wisely exercised in this case, and the appellant cannot be relieved on the ground of delay in getting the power of the Court to authorize a title made to him.

3. The last question to be considered is: Is the fact that the land had depreciated in value since the contract was made a sufficient circumstance to relieve appellant from his agreement?

As a general proposition, where a purchaser gets the property he is contracting for according to the contract that he himself made, the mere fact, unattended by other circumstances, that property has depreciated in value

will not relieve him from his contract to purchase. Indeed, it is apparent that, if contracts for the sale of property depended alone upon fluctuations in price, there would be no certainty in business affairs, and the Court would be paralyzed in its effort to enforce contracts of such a nature. It is unnecessary to go into an extended discussion of matters that have so recently exercised the consideration of this Court. However, the appellant himself settles this question by his own very frank answer to the questions propounded by the Master on the hearing of the case:

"Q. You bought this property at public sale? A. Yes.

"Q. You thought it a good investment? A. Yes.

"Q. You had legal right to demand title, for you paid $2,975 for that property? A. Yes.

"Q. Had real estate in Charleston maintained its level or increased in value since that date, you would still feel that you had a right to demand the deed and possession of the place? A. Yes."

It is, therefore, the judgment of this Court that the decree of his Honor, Judge Johnson, be affirmed.

MESSRS. JUSTICES WATTS and COTHRAN, and MESSRS. ACTING ASSOCIATE JUSTICES J. H. MARION and R. O. PURDY concur.

MR. CHIEF JUSTICE GARY did not participate.