15227

FINKLEA v. CAROLINA FARMS CO.

(13 S. E. (2d), 596)

The order of Judge Lide follows:

The amended complaint herein alleges, among other things, that the defendant, a South Carolina corporation, through its duly authorized officials and representatives, made a contract with G. T. Walker, acting for and on behalf of the plaintiff, whereby the defendant for and in consideration of the sum of $1,000.00 granted and sold to Walker an option to purchase all of the defendant's lands, in Florence County, consisting of several tracts containing in the aggregate 4,669 acres, more or less, upon the payment of the additional sum of $21,500.00, making a total of $22,500.00, on or before December 1, 1939, and upon the exercise of such option to convey the lands by good and sufficient deed in fee simple. It is further alleged that the defendant without cause or justification repudiated the contract and returned the sum of $1,000.00 paid on the same, which has been deposited as a continuing tender with the Clerk of this Court; and that the plaintiff had and still has every intention of exercising his rights under the option, and that he is ready, able and willing to pay the balance of $21,500.00, if the defendant will now accept the same and convey the premises. The prayer of the complaint is for specific performance of the alleged contract.

The answer of the defendant to the amended complaint says, among other things, that it denies that there was or ever has been a valid or binding agreement between the plaintiff and the defendant for the purchase of a contract or option as described in the amended complaint; and for a further defense pleads the Statute of Frauds.

The plaintiff's motion made in due time to frame issues for a jury was overruled by the Court, as was the motion of the defendant for an order of reference. Thereafter the testimony in the cause was taken before me, except that

certain absent witnesses were examined by deposition. Upon all of the evidence so taken the cause came on for argument before me at my chambers at Marion on August 30, 1940, and thereafter written briefs were filed by counsel for the respective parties.

It appears from the evidence that Mr. G. T. Walker of Florence, a real estate broker, had been interested for some time in the purchase of the lands of the defendant corporation, and there had been negotiations between him and the representatives of the company from time to time. And on June 20, 1939, Franklin Q. Brown, Jr., president of the defendant company, wrote to Mr. Walker to the effect that, although not in position to offer the property at any price, if he would on or before June 27, 1939, submit a bid of $22,500.00 cash, net to the company, such bid to be accompanied by a cashier's check for $1,000.00, he would use his best efforts to secure its acceptance; but although the time was extended Mr. Walker did not comply with this suggestion, and on July 5, 1939, wrote Mr. Brown that he had used his best efforts, but the best offer he could get was $18,000.00 net. Hence it is quite clear that the suggestion made by Mr. Brown, if it could be deemed an offer, was not accepted by Mr. Walker, and therefore could not afford a basis for the alleged contract set forth in the amended complaint.

But on July 21, 1939, Mr. Walker again wrote to Mr. Brown as president of the Carolina Farms Company, enclosing a check for $500.00 in payment for an option to purchase the lands in question for the sum of $22,500.00 at any time on or before December 1, 1939. This letter was transmitted by Mr. Brown to George E. Dargan, Esq., attorney for the company, who held one share of stock in it and was one of the directors. And on July 24, 1939, Mr. Walker again wrote to Mr. Brown enclosing an additional check for $500.00, it appearing in the meantime that Mr. Dargan had informed Mr. Walker that Mr. Brown required

this additional amount before his offer could be considered, and when the additional check was given, Mr. Dargan recommended that his offer be accepted. In a letter dated July 25, 1939, Mr. Walker stated to Mr. Brown that pursuant to the request of Mr. Dargan he was writing to authorize him to hold the two checks "recently forwarded to you for a reasonable length of time in order to allow an opportunity to secure the formal approval of the stockholders for execution of the option"; and on the same day Mr. Brown wrote Mr. Walker another letter in which he says: "As Mr. Dargan has explained to you, it will be necessary for us to obtain the approval of other stockholders of the company, that your cheques would be retained so long as might be necessary for that purpose and that they would be returned to you if your offer is not accepted within a reasonable time. I am quite sure that this will be satisfactory to you as we will proceed with all facility to obtain the approval of other stockholders."

Pursuant to the foregoing correspondence, Mr. Dargan prepared a form of call and waiver of notice of special meeting of stockholders of the company to consider the granting of the proposed option, and a form of this call and waiver is in evidence. It states that the meeting is "for the purpose of considering and acting upon a proposal to sell all the real estate of the company, consisting of lands in Florence County, South Carolina, at and for the price of Twenty-two Thousand, Five Hundred ($22,500.00) Dollars, net to the Company," etc. These calls and waivers were forwarded by Mr. Dargan to the office of the president of the company, who on July 26, 27, 28, 1939, transmitted them to the stockholders, and in his letters to the stockholders he stated that: "Subject to approval of bondholders and stockholders, we have accepted an offer from Mr. G. T. Walker, of Florence, S. C., of $1,000.00 for an option until December 1, 1939, for all of our property at a price of $22,500.00 cash, net to the company."

On August 2, 1939, at which time only one of the calls and waivers had been signed and returned to Mr. Brown's office, another offer was made to purchase the company's property. This offer was made to George E. Dargan, Esq., as attorney for the company, by Benton D. Dargan, representing Chas. N. Ingram, and the amount of the offer was $23,000.00 net for an outright purchase of the property a check for $5,000.00 being put up as an evidence of good faith. This offer, of course, was better than the offer made by Mr. Walker, not only because it was $500.00 higher, but because it was for an outright purchase instead of merely for an option. Mr. George E. Dargan thereupon immediately communicated the facts to Mr. Brown, who in turn transmitted the information to the stockholders. The result was that the stockholders indicated they would not approve the offer made by Mr. Walker, and hence on August 4, 1939, Mr. Brown wrote Mr. Walker notifying him that his offer had not been accepted and returning the checks. Mr. Walker refused to accept the return of the checks, claiming that he was entitled to receive the option in question, and thereafter this action for specific performance was commenced.

It is contended by counsel for the plaintiff that Mr. Walker's offer was accepted by the defendant company through the action of its president, for that while such action was necessarily subject to the approval of the stockholders, it may yet be inferred from the fact that the calls and waivers were actually signed by the stockholders (although not by all of them) and returned to Mr. Brown's office this was sufficient evidence of their approval. It will be noted, however, that the execution of the calls and waivers did not purport to approve the offer, but merely to call a meeting for the purpose of considering it, and in fact in the light of the undisputed evidence it is clear that more than half of the stockholders actually declined to approve the offer. But even if the execution and forwarding of the

calls and waivers indicated approval of the offer, manifestly such approval could be withdrawn at any time before the meeting was held and the offer *legally* acted upon. There could be no effective approval by stockholders except at a meeting duly called and duly held.

Stripped to its essence it would appear that the plaintiff's contention is based upon the theory that Mr. Brown, as president of the company, and Mr. Dargan as attorney for the company, were under some obligation to procure the approval of the stockholders, and that hence they should not have submitted the later and higher offer. But even if these representatives of the company as individuals had been under such an obligation, which I do not think is true, obviously they could not thereby make a contract for the company, for under the law only stockholders could do that in a case of this kind. But so far as personal obligation is concerned, it seems obvious that neither Brown nor Dargan would have been justified in failing to submit the better offer, and that it was clearly their duty to do so. Granting that ordinarily the trust relationship of officers is to the corporation rather than to the stockholders yet where, as in this case, the corporation must act through its stockholders there is no distinction.

Doubtless Mr. Walker made his offer in the utmost good faith, but he was bound to realize, not only because he was presumed to know the requirements of the law, but because he was definitely put on notice that his offer was subject to the approval of the stockholders; and of course in that case he ran the risk of someone's making a higher and better offer, in which event he could not expect his offer to be accepted. And there can be no contract unless there is both an offer and an acceptance. Hence in the case at bar there was no contract.

The fundamental basis of a suit for specific performance is that there is a contract between the parties; and the following language quoted with ap-

proval in the case of *Yawkey v. Lowndes,* 150 S. C., 493, 148 S. E., 544, 560, is quite applicable here: "Before specific performance can be decreed, it is first necessary to determine whether there is a contract between the parties or not. If there is no contract, then there is nothing to enforce. It would be speculative for a Court to say what would have been the rights of the parties if they had made a contract."

Not only must there be a contract, but in suits for specific performance "the contract must be established by competent and satisfactory proof, such as is clear, definite, and certain." "The degree of certainty is a reasonable certainty, having regard to the subject-matter of the contract." *Hammassapoulo et al. v. Hammassapoulo et al.,* 134 S. C., 54, 131 S. E., 319, 320.

And it will be borne in mind here that the defendant is a corporation, and the record shows that the property in question constituted all of its real estate and at least substantially all of its assets. Clearly then if the officers of the company had attempted to sell the property without the approval of the stockholders any option or conveyance would have been ineffective. Hence the case comes squarely within the provisions of Section 7705, Code 1932, which provides that any such corporation with the consent of the holders of record of two-thirds of the total number of shares outstanding may sell and convey all or substantially all of its property, etc. "Before such sale or conveyance shall be made, such consent shall be obtained at an annual or special meeting of the stockholders." And it further provided for the giving of notice of such a meeting. The record before the Court in this case demonstrates that no such consent was given by the holders of record of two-thirds of the stock of the company to the proposed execution of the option to Mr. Walker.

In 58 C. J., 945, 946, it is said: "Specific performance of a contract of a corporation may be decreed in a proper case, but not where the contract is *ultra*

*vires,* or where it was entered into on behalf of the corporation by a particular officer without proper authorization, ratification or approval."

It is, therefore, ordered, adjudged and decreed, that the amended complaint herein be, and the same is hereby, dismissed with costs against the plaintiff; and that the plaintiff is entitled to withdraw from the Clerk of this Court the cashier's checks amounting to One Thousand ($1,000.00) Dollars, deposited with him as a continuing tender.

*Messrs. M. L. Meadors* and *McEachin & Townsend* for appellant,

*Messrs. Dargan & Paulling* and *Royall & Wright* for respondent,

March 8, 1941.

*Per Curiam.*

We have painstakingly studied the record and briefs of counsel in this case, and have reached the conclusion that the decree of Honorable L. D. Lide, Judge of the Twelfth Circuit, dated September 17, 1940, correctly decided all issues of law and fact.

The said decree of Judge Lide will be reported as the opinion of this Court; and in so doing, the word "right," first word on line three of page 196 of the Transcript of Record,[2] will be changed to "outright," it clearly appearing that the use of the word "right" was a clerical error in the reporting of the decree.

All exceptions are overruled.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE J. STROM THURMOND concur.